The opinion of the Court was read as drawn up by
Putnam J.
The first objection is, that the writing declared upon is void, by the statute of frauds, inasmuch as it purports to be a contract concerning the sale of real estate, and is to be partly made out by paroi evidence ; for that the referees are not named in the instrument, but it depends wholly upon paroi evidence to prove who were chosen to be the referees-.
What weight might originally have attached to this suggestion it is not necessary to decide, because the contract has been performed in that respect. The parties were satisfied with the appraisers, and attended upon them during their appraisal. It is too late for either now to object, that it cannot be legally known who were chosen for that purpose. The parties could not have conducted themselves as they did, in this respect, unless on account of the agreement, and so far, in performance of the same.
It was also further objected, that the price should have been fixed by the agreement, whereas it was to be ascertained by the referees ; and we are referred to Inst. 3. 24. pr. where it is said, u Pretium autem constituí oportet, nom nulla emptio sine pretio esse potest.,> But we apply another rule,— id certum est, quad cerium reddi potest. It was indeed formerly doubted, whether, when a thing was to be sold at whatever price Titius should value it, such contract would be good; but by Inst. 3. 24. 1. it is decided that it would be ; — “ sed nostra decisio ita hoc constituit, ut quoties sic composita sit venditio, quanti Ule cestimaverit, sub hac conditione staret contractus, ut siquidem Me, qui nominatus est, pretium *198 dejinierit, tune omnímodo secundum ejus ceslimationem et pretium persolvatur, et res tradatur, et venditio ad ejfectum perducatur.” So it is said in Ayliffe’s Civ. Law, bk. 4, tit. 4, “ The price agreed on between the parties ought to be certain; wherefore a purchase is not valid, if it depends on the will of the buyer or seller ; though such price may be well enough referred to the arbitration of a third person to adjudge and determine the value of the thing sold.”— “ And thus the certainty of a price may be had, either by the determination of the contracting parties themselves, or else by relation had to some person or thing.”[1] In the case at bar, the referees have fixed the price, and according to these authorities and the reason of the thing, the sale should be carried into effect; unless for some other objection which has been made by the counsel for the defendant, it should be differently determined.
It has been further objected, that the description of the property is too loose and uncertain ; as “ about two acres of land.” But it seems to us that this general description is sufficiently certain. It refers to the estate as being in the possession and improvement of the parties, in the westerly part of Concord, and speaks of the land as about two acres adjoining and connected with the saw-mill. • If we were to consider such descriptions as void for uncertainty, it would have a tendency to unsettle a vast proportion of the conveyances in the State.[2]
*199 The next objection is, that the award itself is invalid ; that it is uncertain, because the “saw-mill, fixtures, &c.” and about two acres of land, are appraised together at one sum of 850 dollar's. We adopt, upon this point, the opinion of Chancellor Kent, as expressed in Underhill v. Van Cortlandt, 2 Johns. Ch. R. 360, where a similar objection was taken, that “ the appraisers did not, in their deliberations, assess each particular article, in the mill and its appurtenances, separately.” “ But this,” he says, “ was a matter resting in the discretion of the arbitrators.”— “ They did appraise separately the items of the property which were of any magnitude and importance, so as to form a correct and just estimate of the whole.” And he cites'2 Yes. jun. 23, where the same objection was taken, and the court said, it was not necessary that the arbitrators should set forth a schedule of particulars, and state all the items of an account. Such particularity was as little called for in the case at bar, as it is proved that the parties were present and pointed out every thing which was to be valued by the arbitrators.* *[3]
And the remark last made is an answer to another objectian, namely, that the referees excluded some things which ought to have been included, viz. the tenter bars, and included some which should have been excluded, viz. old saws and other tools not used, lots of old bricks, and a piece of cast iron. The parties themselves showed the articles which were to be appraised, and all that were appraised; and there is no evidence that the arbitrators included any thing which was not shown to them, or omitted any thing which the parties showed or requested to be appraised. If therefore it may have happened, that some small items were not shown to be appraised, the parties must be considered as having waived the appraisement of them. And if any were included as belonging to the *200 estate, which might not have been included if they had not been shown as part of it, the parties must be considered as agreeing that such things were appurtenant to the estate, and were to be valued by the arbitrators. But no such articles were in fact included.
It has been objected, that the arbitrators did not determine and award as to the extent of the interest of the parties in the estate. We are satisfied that such an adjudication would have been out of their authority. They were to appraise all the plaintiff’s right, title and interest in the premises. No dispute was made before the arbitrators as to the extent of that right. This objection applied particularly to the appraisement of one third of the water privilege as belonging to the plaintiff, when, it is now said, that he had before that time, by deed dated July I4th, 1817, conveyed a part of it to the defendant. But upon examining that conveyance, we are satisfied that the fact is not as it is contended or stated to be. That was a conveyance of the plaintiff’s right to four fifths of two thirds of the stream, which belonged to the grist-mill, and did not include one third of the stream or water privilege belonging to the fulling-mill, which was appraised.
There is another objection of a graver cast, viz. that the referees misconducted themselves in making their award, by being governed by the opinion of the plaintiff, and not by their own opinion. This objection applies to the appraisement of the water privilege. The evidence is, that the referees, not thinking alike concerning the value, asked each party by himself, how much he considered the privilege to be worth; and that in a short time after they agreed upon a middle sum. Now we do not perceive any thing wrong, or even indiscreet, in that proceeding. It is exceedingly difficult to arrive at the proper valuation' of such property. The respective views of the parties might very properly be taken into consideration. If they were both wild and extravagant, their opinions would have no weight; if not so, the arbitrators might reasonably compare their representations with their own ideas of the true value, and finally arrive at such a result as they did in this case. If they had adopted a middle sum *201 without further consideration, and merely because it was the mean between the sums named by the parties, it would be a different case ; and such an award ought not to be supported.
But if the arbitrators, after viewing the premises with care, and after conversing together upon the value, and after knowing at what rate the parties themselves valued them, should agree upon a middle sum, or any other which might be considered as within a reasonable exercise of their discretion, their award should be confirmed. Indeed we know of no other rule by which an award is to be set aside for over-valuatian, but fraud, clear mistake or corruption. The cases cited in Underhill v. Van Cortlandt, 2 Johns. Ch. R. 361, are very strong to this point. Courts of equity will not set aside the award of referees when fairly made, they being judges chosen by the parties themselves. Fraud, corruption, or misbehaviour of the arbitrators should be proved. The amount of their valuation may be taken into consideration as proving misbehaviour, but it is not otherwise to be drawn into question.
Now, in the case at bar, corruption is not suggested ;[1] and indeed, upon a careful attention to the proceedings and conduct of the arbitrators, it seems to us that they have been actuated by a strong desire to do their duty, and so far as appears to the Court by the evidence in the case, they have acted and judged with discretion.
*202 There appearing to be no legal objection to the agreemen f°r the reference, nor to the award of the referees, it remains to consider the objections which are made to the subsequent proceedings.
It has been urged, that the defendant was not bound to receive the deed which the plaintiff tendered, because the estate was incumbered with an attachment; and that the verdict of the jury finding that the attachment was procured by the collusion of the defendant, was against the weight of the evidence. Upon this part of the cause we remark, that the question was one peculiarly within the province of the jury. The evidence consisted of a great variety of facts and circumstances, which it seems to us did well warrant the verdict.
It has been contended, that the deed, which was tendered, was not sufficient to convey the premises mentioned in the agreement; that the plaintiff was to convey “ all his right, title, interest, and enjoyments” in the described premises, but that the deed describes the estate by metes and bounds, omitting to add “ with all his right, title, interest, and enjoyments.” We think the instruction to the jury upon this point was correct; and that the deed was sufficient to pass the property in the grantor’s possession, with all his right and title to the same, just as if those words had been inserted ; so that the plaintiff could not thereafterwards be admitted to claim any right which he had at the time of giving the deed. And it appears from the evidence, that the defendant admitted he should consider it a good deed, if the plaintiff would bring certificates from the sheriff and his deputies and the register of deeds, that the estate was free from incumbrances.
The direction to the jury was likewise correct, upon the point, that the plaintiff was not bound to produce to the def&Yd&Etf fhe evidence of his title deeds, but that it was sufficient for him ft? rely upon the deed which he tendered in performance of the agreement in that respect by him to be performed. The defendant - might impeach the validity of the title by proving that the estate had been before conveyed by the plaintiff himself, or that if, was under incumbrances in such manner as would justify a refusal on his part to accept *203 the deed, if no truth such were the facts of the case. But the only incumbrance which has been shown on the part of the defendant, was one, as the jury found, made with his own consent.
It has been objected further, that the testimony of Ormsby ought to have been rejected, as it contradicted and went to the discredit of the testimony of Lord, who was called as a witness by the plaintiff. Now, although it is a general rule that a party is not to be allowed to discredit his own witness, yet that must be understood to mean, that the witness is not directly to be impeached on account of his character for truth; but the rule is by no means to extend so far, as that a party may not call a witness to prove a fact which a witness previously called by him has denied. A party is not obliged to receive, as unimpeached truth, every thing which a witness called by him may swear to. If his witness has been false or mistaken in his testimony, he may prove the truth by others. Lord was called by the plaintiff from the necessity of the case, he being a subscribing witness. In his cross examination he stated that he was not interested with the defendant in the purchase. The plaintiff was desirous of proving to the- jury, that Lord and the defendant were concerned together in the transaction; and Ormsby testified to declarations and conduct on the part of Lord, tending to satisfy the jury that he was interested in the affair with the defendant. We think the plaintiff was not bound by the answers which Lord made on his cross-examination, but might by another witness disprove the fact whish Lord had stated.[1]
Upon a review of the whole matter then, it appears that the plaintiff covenanted to sell art estate to the defendant upon certain terms, which the plaintiff has performed, for a *204 sum which the defendant covenanted to pay, under a penalty, hut which he has not paid. The action is brought for the price or consideration which the defendant promised to pay, if by law it is recoverable ; and if not, then for the damages which the plaintiff has sustained from the non-performance of the agreement on the part of the defendant.
We are satisfied that the sum of 1000 dollars, mentioned in the agreement, is to be considered as a penalty, and not as liquidated damages.
By the direction of the judge who sat at the trial, the jury ascertained the plaintiff’s damages, in case the Court should be of opinion that he should retain the estate ; and the defendant moves for a new trial on the ground that the damages so ascertained (1000 dollars) are excessive. It will not however be necessary to determine that question, if the plain tiff is entitled to recover the appraised value. We proceed then to consider that part of the case, remarking, in commencing the discussion, that if the plaintiff may legally recover the appraised value and the defendant take the estate, exact justice will be done, according to the agreement of the parties and the award of the arbitrators.
The plaintiff declares in his first count, in effect, that he covenanted to convey to the defendant certain real estate, for such price as arbitrators should fix for the same, and that the defendant covenanted to purchase it and pay the appraised value. He avers that it was appraised at a certain sum, and that he tendered a deed, and did all things on his part to be done, but that the defendant has not paid the appraised value. He has also brought the deed into court, that the defendant may take it if he pleases. That count is substantially like the declaration in Martin v. Smith, 6 East, 555, except that in the case cited the action was assumpsit by the vendor against the vendee, for not accepting the estate and1 paying the purchase money ; where it was held, that the general allegations of title in the plaintiff, and that it was made good and satisfactory to the defendant, and that the plaintiff was ready and willing and offered to convey to the defendant, were tantamount to a performance on his part so as to entitle him to *205 recover for a breach on the defendant’s part, in not paying the money.
It is not easy to perceive any difference in principle, between the case just cited and the one under consideration. The tendering of the deed was a performance, so far as concerned the plaintiff; and “ it is a rule common to all conditions of obligations, that they be taken to be accomplished, when the debtor, who is obliged under such condition, has prevented its accomplishment.” 1 Evans’s Pothier, 121. See also Lancashire v. Killingsworth, 1 Ld. Raym. 686; S. C. 3 Salk. 342; Sugd. Vend. 160, 162. Now the defendant has prevented the accomplishment of this agreement. We see no reason in law or equity why he should avail him self of his own wrong, to prevent a recovery of the stipulated price.
The same principle is strongly stated in 3 Salk. 108, pi. 5. Covenant to pay W. R. £100, he making the defendant an estate in D ; adjudged, that if he tender him a feoffment, and offer to make livery and seisin, he may bring an action for the money, in the same manner as if he had actually made a title. So in Large v. Cheshire, 1 Vent. 148, in a case by a vendor against the vendee for the purchase money, the court said, “ If the defendant had refused to accept of livery, the plaintiff might as well have brought the action as if he had actually made it.”
The same principle is recognised in Glazebrook v. Woodrow, 8 T. R. 306. There the plaintiff sued the defendant for not paying the purchase money for a schoolhouse, which the plaintiff covenanted to convey on or before a certain day, and the court decided that he could not maintain the action without averring that he had conveyed or tendered a conveyance to the defendant. That was a futile attempt to make the covenants independent, which from the nature of the case were obviously dependent. The payment and the conveyance were to be made at the same time. The plaintiff failed, because he had neither conveyed nor tendered a conveyance.
The principle is recognised by Buller J. in Jones v. Barkley, 2 Doug. 695, “ that where something is to be performed *206 by each party at the same time, he who was ready, and offered to do his part, may sue the other for not performing his.” Sugden (p. 162) says, that-“ a vendor cannot bring an action for the purchase money, without having executed the conveyance, or offered to do so, unless the purchaser has discharged him from so doing;” — implying necessarily, that if he has offered to convey, he may sue the purchaser for the purchase money.[1]
But it has been contended, that this agreement has a penalty, and that the plaintiff should be confined to the damages arising from the defendant’s not accepting the estate ; and that such damages should be small, because the plaintiff may retain the estate, and ought not to recover the defendant’s money, merely because the referees have overvalued the property.
It is, however, well settled, that the insertion of a penalty is not to excuse the party, but to compel him to perform his contract; and he who has performed his part, may compel the other party to perform his principal obligation, notwithstanding it is accompanied with a penalty. So it is laid down in Pothier, tit. Of penal Obligations. 1 Evans’s Poth. 206. He says, “ The object of the penal obligation is to assure the execution of the principal;” —cc and the creditor may, instead of enforcing the penalty, proceed upon the principal obligation.” And so in equity, it is said by Lord Hardwicke, that in all cases where penalties are inserted, in a case of nonperformance, this has never been held to release the parties ‘rom their agreement, but they must perform it notwithstanding. Howard v. Hopkyns, 2 Atk. 371. So says Sugden (p. 155) ; “ And although the defendant may wish to forfeit the penalty, yet a specific performance will be decreed.” And so it was decreed in Hobson v. Trevor, 2 P. Wms. 191. The defendant in that case was the son of Sir John Trevor, who was master of the rolls ; and having greatly offended his father, he was forbidden his presence. He gave a bond, in the penalty of £5000, to settle upon the plaintiff one third of the real estate that should come to him from his father. Unexpectedly Sir John T. died intestate, leaving a great real *207 estate which came to the defendant, much beyond the penalty of the bond. It was held that the plaintiff was not bound to take the penalty of the bond, but that the agreement should be executed specifically. So in 2 Vent. 352, the chancellor said, that a forfeiture shall not bind where a thing may be done afterwards, or any compensation made for it. In the case at bar, the defendant might have accepted his deed ; and he may now take it from the clerk of the court, with whom it is left for him.
We are aware that the estate has not been occupied since the deed was tendered. It was said by the plaintiff’s counsel, and not denied on the other side, that the plaintiff was desirous of occupying without prejudice to his rights in regard to this suit, and that the defendant did not assent to the proposal. How that fact may be, is not perhaps material to know ; because if the estate is impaired from that or any other circumstance, without the fault of the plaintiff, the loss should fall on the defendant, who has, without any legal cause, refused to accept the deed and take the possession. And the same rule would apply as well to goods and chattels, in such circumstances, as to houses and lands. So it is stated in Inst. 1. 24. 3. “ Cum autem emptio et venditio contracta sit, periculum rel venditce statim ad emptorem pertinet, tametsi adhuc ea res emptori tradita non sit.”[1] And the cases of a slave thus sold being injured, of a building being consumed by fire, and of lands being washed away by a torrent, are stated as examples, where the loss is to be borne by the buyer, who is obliged to pay the price agreed on, though he never had possession of the thing. ££ Quicquid enim sine dola et culpa venditoris accidit, in eo venditor securus est.”
Upon consideration of the whole matter, the Court are of opinion, that the plaintiff have his judgment upon the verdict, for the appraised value of the estate, and that interest be added to the verdict to the present time.

 Pothier, (par Dupm,) Traité du Contrat de Vente, pt. 1, art. 2, § 2.

 See Haven v. Richardson, 5 N. Hamp. R. 113; Lyman v. Loomis, 5 N. Hamp. R. 408; Barnard v. Martin, 5 N. Hamp. R. 537; Paine v. Webster, 1 Vermont R. 101.
If the description in a conveyance be so uncertain, that it cannot be known what estate was intended to be conveyed, the conveyance is void. Worthington v. Hylyer, 4 Mass. R. 205 ; Wright v. Pond, 10 Connect. R. 255.
See as to a mistake in the name of the occupier of the premises, Wilkinson v. Malin, 2 Tyrwh. 544; S. C. 2 Crompt. & Jerv. 636; Howell v. Saule, 5 Mason, 410; 4 Kent's Comm. (3d ed.) 467.
As to a mistake in the name of the town or parish where situated, see Lambe v. Reaston, 5 Taunt. 207; S. C. 1 Marshall, 23; in the number of the lot, Tenny v. Beard, 5 N. Hamp. R. 58.
Where the quantity is mentioned, in addition to a description of the boundaries, without any express covenant that the land contains that quantity, the *199 whole must be considered as a mere description. Powell v. Clark, 5 Mass. R. 355; 4 Kent's Comm. (3d ed.) 466, 467. See Bacon v. Leonard, 4 Pick. 277.

 As to uncertainty in an award, see Dolbier v. Wing, 3 Greenl. 421; Thornton v. Hornby, 8 Bingh 13; S. C. 1 Moore & Scott, 48; S. C. 1 Dowl. Pract. Gas. 237; Hopcraft; v. Hickman, 2 Sim. & Stu. 130; Aitcheson v. Cargey, 9 Moore, 381; S. C. 2 Bingh. 199; S. C. M'Clel. 367; Hazeltine v. Smith, 3 Vermont R. 535.

 Misconduct in the arbitrators seems regularly not to be the subject of a plea, but only a ground to apply to the court to set aside the award. Riddle v. Sutton, 2 Moore & Payne, 345. See also Brazier v. Bryant, 3 Bingh. 167; S. C. 10 Moore, 587; Braddick v. Thompson, 8 East, 344; Wills v. Maccarmick, 2 Wils. 148; 2 Stark. Ev. (5th Amer. ed.) 86.
A different doctrine however prevails, where the equity powers of the court are not sufficiently extensive to deal with awards thus summarily. See Beam v. Farnham, 6 Pick. 269; Williams v. Paschall, 3 Yates, 564, Harker v. Hough, 2 Halsted, 428.
It may be averred and proved, that the af 'ors (omitted to take into consideration certain accounts that were laid befeie tnem. Bean v. Farnham, 6 Pick. 269; Standish v. Parker, 2 Pick. (2d ed.) 22, n. 3.; Mitchell v. Staveley, 16 East. 58. See Bridge v. Gray, 14 Pick. 55.
So it may be averred and proved, that they took into consideration matters not submitted. Fisher v. Pimbley, 11 East, 193; Bean v. Farnham 6 Pick 269

 See Lawrence v. Barker, 5 Wendell, 301; Jackson v. Leek, 12 Wendell, 105; Crowell v. Kirk, 3 Devereux, 355; Jackson v. Varick, 7 Cowen, 238; Roscoe’s Dig. Crim. Ev. (Amer. ed.) 136, notes, 2, 3; Cowden v. Reynolds, 12 Serg. & Rawle, 281; Perry v. Massey, 1 Bailey, 32; Winslow v Mosely, 2 Stewart, 137; 1 Stark. Ev. (5th Amer. ed.) 185, 186; Ewer v Ambrose, 3 Barn. & Cressw. 486; Bradley v. Ricardo, 1 Moore & Scott, 133; S. C. 8 Bingh. 57; Friedlander v. London Ass. Co. 4 Barn. & Adolph. 193; Rex v. Oldroyd, Russ. & Ryan’s Crown Cas 88.

 See 2 Stark. Ev. (5th. Amer. ed.) 863, 864, and notes.

 See 2 Kent’s Comm. (3d ed.) 498, 499.