*419
 
 Mr. Justice MILLER
 

 delivered the opinion of the court.
 

 The first and most important question arising in the argument of the ease before us, respects the validity of the award and its effect in limiting the field of investigation of this court on appeal.
 

 On the one hand it is maintained that the provision which gives to either party the right to appeal to this court, as from other decrees or judgments in prize cases, in effect nullifies the award here and opens the entire case upon all the pleadings and evidence in the record as though no award had been made. On the other, it is argued that the clause which declares the award final upon all questions of law and fact involved in the cause, forbids any inquiry here into any question of law' or fact passed on by the arbitrators.
 

 As regards the first proposition, it is unreasonable to suppose that parties to a suit in court, referring the whole subject to arbitrators with an agreement that the award shall be final and become the decree of the court, intended to leave the whole case open after the award as though none had been made.
 

 The provision for an appeal to this court was undoubtedly to negative the possible inference that such appeal was forbidden by tbe clause making the award final in all questions of law and of fact arising in this case.
 

 It is to be observed that the appeal is not and could not be from the award, but from the decree of the court below. That court would deal with the award in the same manner that awards in other courts could be dealt with.
 

 There is nothing in the nature of the admiralty jurisdiction, or of an appeal in admiralty, as counsel seem to suppose, which would prevent parties in that court, whether sitting in prize or as an instance court, from submitting their case by rule of the court to arbitration, or which varies the effect to be given to such award from that to be given to it in any other court, either in the court below or on appeal. This award is to be construed here and its effect determined by the same general principles which would govern it in a court of common law or of equity.
 

 
 *420
 
 Nor do we conceive, notwithstanding the expression in the agreement of submission, that all questions of law in the case are concluded by the award. In this respect it is no more than a submission of all matters iuvolved in the suit.
 

 Where the award finds facts it is conclusive, where it finds or announces concrete propositions of law, unmixed with facts, its mistake, if one is made, could have been corrected in the court below,, and can be corrected here. Where a proposition is one of mixed law and fact, in which the error of law, if there be one, cannot be distinctly shown, the parties must abide by the award.
 

 The award was also liable, like any other award, to be set aside in the court below, for such reasons as are sufficient in other courts. For exceeding the power conferred by the submission, for manifest mistake of law, for fraud, and for all the reasons on which awards are set aside in courts of law or chancery. A motion was made in that court to set aside the award on the following grounds :
 

 1st. The finding that the capture was not a conjoint operation of the army and navy of the United States is not warranted by the law and the facts, but is expressly contrary to the law and the facts.
 

 2d. The finding of the value of the vessels alleged to have been captured is without warrant of law and wholly unsupported by evidence.
 

 8d. The finding that the property alleged to have been captured was “ lawful prize of war, and lawful subject of condemnation as such,” is erroneous and wholly unsupported by the law and facts.
 

 4th. The finding that the force of the enemy was superior to the forces of the United States ships and vessels engaged in the alleged capture, is erroneous and wholly at variance with and unsupported by the law and the facts.
 

 5th. The finding that the steamer McRea was lost after that she was alleged to have been captured, and while she was being used as cartel by the United States, is erroneous and not supported by the law and the facts. The evidence shows that the Mcitea belonged to the United Statés prior
 
 *421
 
 to her use and when she was used by the rebels, and that she was recaptured from them by the naval forces of the United States on the occasion referred to in the award, and that she was not prize of war. At most it was but a recapture.
 

 6th. It is erroneous, and not warranted by law, to allow military salvage, as against the United States, for the alleged recapture of the vessels set out in paragraph No. 10 of the award. Such property was not recaptured by the libellant and those he represents.
 

 A glance at these grounds will show that all of them, except the last, is an attempt to reopen the questions submitted to the arbitrators, because they had decided erroneously questions of pure fact, or of law aud fact, in which the former was so mingled with the latter as to be inseparable.
 

 Applying these principles to the case before ns, we think we are bound by the first statement of the award, that the capture was not a conjoint operation of the army and navy. There is no evidence here of any misapprehension of the law governing that question, and it must obviously have been one mainly of fact, and the award is, therefore, conclusive.
 

 So also the names of the vessels participating in the capture, of the vessels and other property captured, and the value of that property, are all questions exclusively of fact which the arbitrators had a right to find, were bound to find, and the finding is a finality. The finding that all this property was lawful prize of war and subject to condemnation as such, was the very thing submitted to them for their decision, and unless it can be shown that in making this award they have acted upon a manifest mistake of law, the award must be upheld. Does this appear? Having found the capture, the property captured, the names and character of the vessels engaged in it, and the nature of the capture, the only other question open was the character of the captured property.
 

 "Was it liable to capture as prize for any of the reasons which make property liable to the law of prize? Was it
 
 *422
 
 contraband of war? Had it been engaged in violating or attempting to violate a blockade ? Was it enemy property ? If it was captured with any or all of these characteristics it was lawful prize, and subject to condemnation, and whether it was or not was clearly matter to be decided by the arbitrators, and unless they violated some principle of law in deciding it, which this court can see, the award must be confirmed.
 

 The Attorney-General insists that it sufficiently appears from the record that the ships Metropolis, Farwell, Milan, the barkantine Ocean Eagle, the bark George Alban, and the steamer Sallie Robinson, of the value of $116,500; and the steamers St. Charles, Time and Tide, Louisiana Belle, Empire Parish, St. Mauricej aud Morning Light, of the value of $64,000, were not lawful prize or subjects of condemnation. The foundation of the argument is that these vessels were owned by loyal citizens, and were on that account delivered up to their owners by the military authorities after their capture. As regards the six vessels last named, the award is totally silent as to their being delivered to the owners, or as to the loyalty of those owners.
 

 There is some evidence in the record, if we could go behind the award, to show that they were delivered to their owners, but none whatever as to the character of these owners for loyalty. We cannot, in the face of the award that they were lawful prize and subject to condemnation, infer that their owners were loyal men, if we could look to the evidence to find that the vessels were delivered to them.
 

 It is, therefore, clear that there is no sufficient evidence to show that the award as to these vessels was based on any mistake of law.
 

 The six vessels first named stand on a difiereut ground. As to them, the tenth finding of the award is, that they “ were after capture given up to their lawful loyal owners, from whom they had been taken by the enemy.”
 

 On this point we understand the award as stating that these vessels had been the property of loyal citizens of the United States, had been seized by the enemy for their own
 
 *423
 
 use, and when captured from the enemy by the libellants had been restored by the military power in New Orleans to their original owners, and that on this state of facts the arbitrators hold that when captured they were lawful prize and liable to condemnation as such in a prize court. Unless the fact that the original owners were loyal to the government of the United States is of itself sufficient to exempt these vessels from the law of prize, the award of the court must be sustained. If the owners resided on that side of the line of bayonets spoken of in the
 
 Prize
 
 Cases
 
 *
 
 which adhered to the Union, then they were not liable to condemnation as prize, for their owners could have interposed a claim in the prize court, and on payment of salvage their property would have been restored to them. But if their owners resided on the other side of that line, were themselves citizens of- and domiciled in States declared by the President’s proclamation to be in insurrection, then their property captured in naval warfare was lawful prize, and subject to condemnation. The loyalty of the owners made no difference in this regard. This whole subject was exhaustively examined in the
 
 Prize
 
 Cases, and the second proposition established by the opinion, commencing at page 671, 2 Black, is that property of persons domiciled or residing within the enemy’s lines was enemy property, and liable to capture as prize of war, without regard to their sentiments of loyalty or disloyalty to the United States government. This was sustained on the ground that all such property, being capable of use in aid of the enemy, was liable to capture for the purpose of crippling his resources. And one vessel and some personal property was condemned as prize in that case, because owned by citizens of Bichmond, though no disloyal acts were charged or proved against them.
 

 This rule was acted on by this court in all cases which came within it (and there were several) growing out of the same civil war. The rule is vindicated by the fact that these very vessels were seized and were in use by the public forces
 
 *424
 
 of the enemy at the time they were captured, and their capture was a deadly blow at their power to carry on the war.
 

 There is nothing in the finding of the court, nor in the record, nor is it suggested by counsel in argument, to show that these owners were not domiciled in the rebel States. It would be reasonably supposed from all that
 
 is
 
 known, that such was the case; and in favor of the award and decree below it will be presumed that the arbitrators had evidence of that fact.
 

 It does not appear, therefore, that in holding these vessels liable to capture and condemnation, and lawful prize of war, the arbitrators violated any principle of law.
 

 But it is quite clear that in awarding the value of these vessels to the captors as prize, and in addition forty per cent, of that value for salvage, they did violate law and justice.
 

 This is too apparent to need argument, and is seen on the face of the award; and the decree of the Supreme Court of the District as to the $46,600 awai’ded as salvage is reversed, and in all other particulars it is affirmed, and the case is remanded to the Supreme Court of the District of Columbia, with directions to reform its decree in this particular, and for such further proceeding as may be necessary, in conformity with this opinion.
 

 Beversed and remanded accordingly.
 

 *
 

 2 Black, 674.