SCHREIBER ET UX. *v.* PACIFIC COAST FIRE INSURANCE COMPANY ET AL.

[No. 182, October Term, 1949.]

*Decided July 18, 1950.*

The cause was argued before MARBURY, C. J., and DELAPLAINE, COLLINS, HENDERSON and MARKELL, JJ.

*Jacob Kartman,* with whom were *Makover* and *Kartman* on the brief, for appellants.

A. *Frederick Taylor*, with whom were *Harry W. Allers* and *Allers and Cochran* on the brief, for appellee.

MARKELL, J., delivered the opinion of the Court.

These are appeals by plaintiffs from judgments for plaintiffs on verdicts in two suits, tried together, against different insurers on fire insurance policies. The verdicts are based on an appraisal of "the actual cash value" of the property insured. Plaintiffs contend, for a number of reasons, that the appraisal was not binding on them and should not have determined the amounts of the verdicts. The only relevance of the value of the property is in the application of the 80% coinsurance clause. The amount of loss is not in dispute here. As the loss was a partial loss, the effect of the coinsurance clause is that the greater the value of the property the less the liability under the policies. Plaintiffs contend that the value of the property was substantially less than the amount of the appraisal.

The policies in suit provided that, "In case the insured and this Company shall fail to agree as to the actual cash value or the amount of loss, then, on the written demand of either, each shall select a competent and disinterested appraiser and notify the other of the appraiser selected * * *". Defendants, through their adjusters, Insurance Adjusters, Inc., selected Harold M. Cummins. Mr. Cummins had been in the building business for thirty-three years, first with the Consolidated Engineering Company in building, construction and incidentally appraisals, then with a corporation formed by his uncle, his cousins and himself. Since 1945 he has been in the appraisal business, appraising fires and buildings. In the instant case he was designated on May 29, 1947, the appraisal agreement was signed on June 18, 1947 and the award was made on April 21, 1948. During the pendency of this appraisal he took fifteen other appraisal jobs for Insurance Adjusters, Inc.; from May 6, 1946 until the beginning of this appraisal, twelve jobs. Meanwhile he had many appraisal jobs for other insurance

companies or their adjusters and for owners and insured. He says about sixty per cent of his appraisal work is done for owners. Before he was selected by defendants' adjusters as their appraiser, he was asked by plaintiffs' adjuster, Milton Kind, to appraise this loss, but when he went to the premises he found some one else had been employed. Mr. Kind selected not only plaintiffs' appraisers but also their lawyers, who were changed several times. It is not contended that defendants were guilty of any misrepresentation or concealment regarding Mr. Cummins or that Mr. Kind was ignorant of the nature of Mr. Cummins' business or of the fact that Mr. Cummins accepted employment in a particular case from either insurer or insured, whichever chose to employ him. It seems quite impossible that Mr. Kind could have been uninformed in this respect.

It is generally held, and plaintiffs apparently concede, that the mere fact of other employment by insurance companies does not, as a matter of law, disqualify one from selection as "a disinterested appraiser." *Firemen's Fund Ins. Co. v. Flint Hosiery Mills*, 4 Cir., 74 F. 2d 533, 104 A. L. R. 556; see cases collected in note, 104 A. L. R. 563. Plaintiffs, however, contend that though Cummins' other employments did not disqualify him as a matter of law, the jury should have been permitted to find, as a matter of fact, that he was not "a disinterested appraiser". In connection with misrepresentations, (*Bradshaw v. Agricultural Insurance Co.*, 137 N. Y. 137, 141-144, 32 N. E. 1055), or concealment, ("deceptive silence", *Coon v. National Fire Insurance Co.*, 126 Misc. 75, 78, 213 N. Y. S. 407), such other employment may be considered by the jury on the question of disqualification. But in the instant case there is no evidence of misrepresentation, concealment or other misconduct on the part of either defendants or Mr. Cummins. The court properly refused to submit to the jury the question of disqualification on the evidence of other employment, which as a matter of law is insufficient to show disqualification. Furthermore, there is no evidence or other

ground for belief that Kind, plaintiffs' adjuster, was not fully informed as to Cummins' business, including work for insurers as well as insured.

Plaintiffs complain that their examination of Cummins was restricted to other employment by Insurance Adjusters, Inc., to the exclusion of employment by other adjusters for insurance companies. The extent of such examination is largely within the discretion of the trial judge. We see no abuse of discretion. Legally insufficient evidence of other employment by the same adjusters would not have been made sufficient by evidence of employment by other adjusters, especially in view of Cummins' testimony that the greater part of his business was work for owners.

Cummins testified that after the appraisers had disagreed as to the cash value and had called in the umpire, the two appraisers and the umpire set down their own figures, added them, divided by three and then agreed upon that figure as the combined judgment of the three. Plaintiffs contend that an appraisal thus arrived at is not valid.

It has been held that a quotient verdict is no more lawful for arbitrators than for jurors. *Pearce v. Rickard,* 18 R. I. 142, 26 A. 38, 19 L. R. A. 472, 49 Am. St. Rep. 755. If, however, two arbitrators or appraisers strike a mean between the opposing claims of the parties and then adopt it as their appraisal, this is not unlawful, though it might be if they had agreed in advance to accept the mean. *Brown v. Bellows,* 4 Pick. 178, 191-192, 21 Mass. 179. In the instant case we think the appraisal is not invalid. We do not sanction "quotient verdicts" by arbitrators or appraisers. But without some conscious or subconscious, exact or approximate, splitting of differences, no agreement would be reached by jurors, arbitrators, appraisers or bargainers. There is no evidence that these appraisers agreed to be bound by the result of their computations or otherwise subordinated their judgment to the fall of the dice.

Plaintiffs also contend that this evidence shows that the umpire was improperly called in before the appraisers had disagreed. The uncontradicted evidence is to the contrary. The fact that all three eventually concurred in the result does not alter the fact that the two appraisers first disagreed and found it necessary to call in the umpire.

Plaintiffs say the award was invalid because of delay in arriving at it. The loss occurred on March 16, 1947; suit was instituted on March 15, 1948, one day before expiration of the one year policy period of limitation. We intimate no opinion whether the limitation provision would have been applicable in the circumstances. The award was made on April 21, 1948. As late as February 2, 1948 a hearing was had before the appraisers and the umpire. Plaintiffs did not, when they instituted suit, or at any time before the award was made, attempt to repudiate the appraisal agreement or the submission to appraisal. There were a number of reasons, good or bad, for the long delay. The court submitted to the jury the question whether the delay in making the award was unreasonable. The court could not have ruled, as a matter of law, that it was unreasonable.

Plaintiffs contend that the award should be set aside for error of law in that the appraisers and the umpire erroneously held "actual cash value" to be equivalent to cost of reproduction less depreciation. Some courts have held that "actual cash value" is equivalent to cost of reproduction less depreciation, but we think the best considered cases hold that cost of reproduction is not the measure of "actual cash value", but is very important evidence of value. *McAnarney v. Newark Fire Insurance Company,* 247 N. Y. 176, 159 N. E. 902, 56 A. L. R. 1149; *Kingsley v. Spofford,* 298 Mass. 469, 476, 11 N. E. 2d 487; *Bonbright* on *Valuation of Property,* pp. 369-370, 384-394; 6 *Appleman* on *Insurance Law and Practice,* § 3823. If we were to take over the appraisers' functions we might doubt whether cost of reproduction, less depreciation, is a reliable guide to the value of this kind of

property—an old dwelling house property in the 1400 block on Eutaw Place. On the other hand, some special effort seems to have been made to allow for obsolescence of high ceilings and elaborate stairways. Again, if the question were properly before us, it is not clear that the appraisers and umpire committed error of law in determining "actual cash value". Cummins' testimony indicates that he, and apparently the other appraiser and the umpire, considered cost of reproduction, less depreciation, equivalent to "actual cash value". Nevertheless he insists that he considered all other evidence of value, though no other evidence of value was reflected in the result. In construing tax statutes we have held that factors required to be considered in making a valuation may be sufficiently "considered" though they do not enter into the result in a particular case. *State Tax Commission v. Chesapeake & Potomac Tel. Co.*, 193 Md. 222, 232, 66 A. 2d 477, 481; *Seaboard Comm. Corporation v. State Tax Commission*, 181 Md. 234, 243-244, 29 A. 2d 294.

However, the evidence of value on which the award was based is not reviewable by us. The appraisal clause in the policies in suit provides, "The appraisers shall then appraise the loss, stating separately actual cash value and loss to each item; and failing to agree shall submit their differences only, to the umpire. An award in writing, so itemized, of any two, when filed with this Company shall determine the amount of actual cash value and loss."

"It is a fundamental principle that where the parties to a dispute decide of their own accord to submit their dispute to arbitration without restriction or condition, the award on the subject matter, in the absence of fraud or mistake, is binding and conclusive upon the parties. *J. F. Fitzgerald Construction Co. v. Southbridge Water Supply Co.*, 304 Mass. 130, 23 N. E. 2d 165; *Stowe v. Mutual Home Builders Corporation*, 252 Mich. 492, 233 N. W. 391. The Court will not review the findings of law and fact made by arbitrators, or substitute its

judgment for theirs.  Arbitrators are expected to frame their award on broad views of justice, which may sometimes deviate from strict rules of law.  Their good faith in the discharge of their duties will be presumed, and their award will not be disturbed unless it clearly appears that they were influenced by partiality or corruption.  The reason for this doctrine is that an award by arbitrators is the decision of a tribunal which the parties themselves have created, and by whose judgment they have mutually agreed to abide.  Very often these tribunals are without legal training, and the purpose of the parties in creating them is to have their disputes settled speedily and inexpensively by a decision which will be final and unalterable.  Obviously, if the decision of such a tribunal should be subject to review under the strict rules of the law, the arbitration, instead of promoting economy and finality, would generally be but a forerunner to protracted litigation.  To avoid such controversies the courts have adopted the rule that, after the parties to an arbitration have had a full and fair hearing, the award will be expounded favorably, and every reasonable intendment will be made in its support." *Continental Milling & Feed Co. v. Doughnut Corp.,* 186 Md. 669, 674-675, 48 A. 2d 447, 449.  See also *Hewitt v. State,* 6 Har. & J. 95, 97-98, 14 Am. Dec. 259; *Witz v. Tregallas,* 82 Md. 351, 368, 33 A. 718; *Roberts v. Consumers' Can Co.,* 102 Md. 362, 368-369, 62 A. 585, 111 Am. St. Rep. 377; *Dominion Marble Co. v. Morrow,* 130 Md. 255, 260, 100 A. 292; *McDonald v. Real Estate Board,* 155 Md. 377, 382-383, 142 A. 261.

This rule restricting and preventing judicial review of errors of fact or of law in an award of arbitrators or appraisers is applicable to an appraisal under the usual appraisal clause in a fire insurance policy.  "If an award could be set aside under such testimony as was here offered, then the finding of appraisers where the determination is the value of property, could be set aside in every case in which one of the arbitrators should testify that he had come to a mistaken conclusion as to

its value and had reached the opinion that it was less or more. If this were the rule, there would be complete instability in arbitration awards. The mistakes which will avoid an award are in a very limited class. 'An honest mistake of judgment in the conclusion of arbitrators which does not exceed the bounds of the submission is not, as a general rule, ground of impeachment of the award, whether the alleged mistake is one of fact or of law, or of both. * * * Such errors are among the contingencies which parties assume when they select such tribunals. When it is sought to set aside an award, upon the ground of a mistake committed by arbitrators, it is not sufficient to show that they came to a conclusion of fact erroneously, however clearly it may be demonstrated that the inference drawn by them was wrong. It must be shown that, by some error, they were so misled or deceived that they did not apply the rules which they intended to apply to the decision of the case, so that upon their own theory, a mistake was made which has caused the result to be somewhat different from that which they had reached by their reason and judgment. A contrary course, it is said, would be a substitution of the judgment of a court in place of the judges chosen by the parties, and would make an award the commencement, not the end, of litigation.' 5. C. J. 179. A mistake which will be sufficient to avoid the award must be won that is plain and palpable, such as an erroneous computation or calculation of the amount, and the like. 5 C. J. 182, and cases cited." *Patriotic Order Sons of America Hall Association v. Hartford Fire Insurance Co.*, 305 Pa. 107, 115-116, 157 A. 259, 261, 78 A. L. R. 899.

"Where the award finds facts it is conclusive, where it finds or announces concrete propositions of law, unmixed with facts, its mistake, if one was made, could have been corrected in the court below, and can be corrected here. Where a proposition is one of mixed law and fact, in which the error of law, if there be one, cannot be distinctly shown, the parties must abide by the

award." *United States v. Farragut,* 22 Wall. 406, 420, 22 L. Ed. 879. The mistake of law here referred to is evidently an error of law apparent on the face of the award, referred to in above-cited decisions of this court. In that case a motion was made to set aside the award on the ground that "the finding of the value of the vessels * * * is without warrant of law and wholly unsupported by evidence." On this point the court said, "So also the names * * * of the vessels and other property captured, and the value of that property are all questions of fact which the arbitrators had a right to find, were bound to find, and the finding is a finality." 22 Wall. 421, 89 U. S. 406.

Plaintiffs contend that they were entitled to summary judgment for the amounts of the ultimate verdicts and judgments, as amounts regarding which there was no genuine dispute. The only practical bearing of this contention is that it would entitle plaintiffs to interest from the date of the summary judgment, instead of from the date of the verdicts. We think plaintiffs were entitled to summary judgment for $1,023.77, an undisputed separable item against Pacific. This item, however, is not now material, since the jury actually allowed interest on it.

The court granted summary judgment to the extent of holding that defendants were liable to plaintiffs for the loss, the amount of the liability to be determined at the trial of the case. Plaintiffs, in asserting a right to summary judgment for the amounts of the verdicts, stress defendants' pleas of tender of these amounts. A tender of a certain amount in full, if not accepted in full, is not an admission that the amount is in any event due as a part of a larger indebtedness. Defendants pleaded tender on the ground that the appraisal was conclusive. If plaintiffs had accepted the tender the sums tendered would have been unconditionally due. Since plaintiffs did not accept the appraisal but sought to set it aside, it was not certain that plaintiffs would ultimately recover as much as they would under the appraisal. If

650

the appraisal had been set aside, the question of value would have been open, and the court could not say in advance that the verdicts would be more or less than those based on the appraisal.

Furthermore, at the trial the court, at plaintiffs' request, charged the jury that defendants, notwithstanding their pleas, had not actually made any tender. The result would be incongruous if plaintiffs were entitled to a summary judgment on account of the pleas of tender and also to an instruction at the trial that there had been no tender.

*Judgments affirmed, with costs.*