MISSOURI–KANSAS–TEXAS RAILROAD
COMPANY, Appellant,

v.

Jewell D. CHESHER, Appellee.

No. 7352.

Court of Civil Appeals of Texas.

Texarkana.

Feb. 20, 1962.

Rehearing Denied March 13, 1962.

Howell, Freels, Elliott & Nall, Denison, G. C. Butler, Bonham, for appellant.

White & Fair, Dallas, Cunningham, Cole & Southerland, Bonham, for appellee.

DAVIS, Justice.

This is a suit for damages as the result of a car being hit by a train in which the driver of the car and his four children, three girls and one boy, were killed. Appellee-plaintiff, Jewell D. Chesher, a widow, and plaintiffs Thomas H. Chesher and Tessie Chesher, husband and wife, and father and mother of James Thomas Chesher, deceased, sued the appellant-defendant, Missouri-Kansas-Texas Railroad Company. Plaintiffs, Thomas H. Chesher and Tessie Chesher, filed a disclaimer and were not awarded any damages. The collision occurred at a railroad crossing on Hamilton (Holmes) Street in the town of Trenton, Fannin County, Texas. The appellee, as surviving spouse and·mother, alleged damages for the death of her husband, James

Thomas Chesher, and the death of the four children.

The collision occurred at approximately 8:00 o'clock P.M., in the evening of December 6, 1958. The automobile in which the deceased were riding was a 1951 two-door Chevrolet. The automobile was being driven by James Thomas Chesher from Grand Prairie, Texas, to the home of his parents in Trenton, Texas. His four children were riding on the back seat of the car. A television set was riding on the right side in the front seat. The automobile approached the railroad crossing from the Southwest. The train of the appellant, the Texas Special passenger train, approached the crossing from the Southeast. The front of the automobile was across the railroad track at the time it was hit by the train. The collision killed Mr. Chesher and the four children, instantly.

According to the allegations and the proof, the crossing at which the collision occurred is a paved street and a main artery of traffic to and from the town of Trenton. It is a heavily traveled roadway to and from the town square for traffic moving northeasterly and southwesterly. The street is narrow, and connects with a Farm-to-Market road on the southwest side of the town. There are numerous obstacles to a clear view of the railroad track, such as houses, buildings, trees, utility poles, shrubberies, and a depot located adjacent to or very near the east side of Hamilton Street and near the appellant's main line track on which the train involved in the collision was traveling in a northwesterly direction. The obstructions are so situated that a person riding in an automobile at night, and using said Hamilton Street, as were the deceased, can hardly see anything on the main line of the railroad track until they are within a few feet of the appellant's main line track. The street, when very close to appellant's main line track, approaching from the southwest, after it enters the appellant's main line track, turns sharply to the right and on an upgrade of approximately four to six feet. Such a

condition within the appellant's main line track requires a person using the same to use more than ordinary care to maneuver an automobile on the street. The evidence shows that some 400–500 feet before the street gets to the railroad tracks is a rough and curving thoroughfare. There are three railroad tracks on Hamilton Street; one, the main line track, and two spur, or switch, or house tracks. The main line track is in the center, with a spur, or switch, or house track on either side. The deceased had to pass one track (called a house track) before reaching the main railroad track. The rails on the main line of the road surface protruded above the surface. Considering all the facts together, on the night of the collision, it was a rough and dangerous crossing.

The collision occurred on Saturday night when the town lights and other lights in the business district would reasonably be calculated to reflect in the face of a traveler in an automobile, such as the deceased, as the car approached the town. A "Norther" was in progress at the time of the collision, and the weather was extremely cold and below the freezing point. The wind was blowing from the North. The appellant had permitted an old shed or barn to exist for quite some time on the right-of-way, and on this particular night, loose tin was flapping and noisily knocking in the wind. The train was traveling at a high rate of speed, was considerably behind schedule, and apparently trying to make up lost time at the time of the collision. The train was running with the throttle wide open.

The jury answered all of the special issues in favor of the appellee. The pleadings supported the issues, and the evidence is sufficient to support the answers.

According to the record, it took about thirteen days to try the case. The case was fully and carefully tried.

The jury specifically found that the railroad crossing at the time and place and on the occasion in question was extra-hazardous. That the appellant was negligent in

not having a warning system capable of warning the traveling public. The jury convicted the appellant of operating its train at a high and excessive rate of speed; of failure to sound a signal as required by law, and failure to ring a bell as required by law. The jury also found the appellant guilty of failure to slow the speed of the train prior to entering the crossing; failure to keep a proper lookout, and of failing to continuously sound the signal until the train was past the crossing. The jury likewise found the deceased not guilty of any act of contributory negligence including any violation of Art. 6701D, Sec. 86, Vernon's Ann.Civ.St., as plead by the appellant.

Damages were found by the jury in favor of the appellee as follows: For the loss of the car $350.00; for burial expenses for the entire family $2,085.00; damages because of the loss of her husband, James Thomas Chesher, $42,500.00; damages for the loss of the three girls at $4,917.00 each (a total of $14,751.00); damages for the loss of the boy at $7,750.00, a total of $67,436.00. Judgment was entered accordingly.

On January 12, 1961, appellant filed an amended motion for new trial, and the court set the same for hearing on February 9, 1961. On February 9, 1961, a hearing was had and the court took it under advisement. Forty-five days after January 12, 1961 (February 26, 1961) came on a Sunday. Under Rule 4, Texas Rules of Civil Procedure, the motion was not overruled by operation of law until February 27, 1961. On February 27, 1961, the court, in open court after due notice to all parties announced that he was going to overrule the amended motion for new trial. The court signed an order overruling the same on February 28, 1961, in which it is stated that the amended motion for new trial was overruled on February 27, 1961. According to Rule 329b, T.R.C.P., an amended motion for new trial can not be undetermined after the 45 day period as provided by the rule unless it falls on Satur-

day, Sunday, or a legal holiday. In case the 45th day falls on Saturday, Sunday, or a legal holiday, the amended motion for new trial is not overruled by operation of law until the first day after Sunday or the legal holiday. Fulton et al. v. Finch (Tex.S.Ct.), 346 S.W.2d 823. Therefore, the order signed on February 28, 1961, is void and has no force or effect whatever. The supersedeas and appeal bond being filed on March 24, 1961, less than 30 days after the amended motion was overruled by operation of law, it is necessary to consider the points of error as raised by the appellant. All eight points of error brought forward complain of the action of the trial court in overruling the amended motion for new trial.

It can be assumed that the first six points of error, as stated in the points and from the brief, complain that: (1) The appellee wholly failed to sustain her burden of proof and show actionable negligence on the part of the appellant; (2), the evidence shows concurring negligence of appellee and her husband; (3) that the testimony in the case, together with the physical facts, conclusively show negligence and proximate cause as a matter of law on the part of the appellee and her husband, and the trial court should have entered judgment in favor of appellant that appellee take nothing by her suit; (4), that according to the evidence in the case, the deceased, the driver of the automobile, was guilty of violating Article 6701D, Sec. 86, Subdivisions a, c, and d thereof, constituting negligence as a matter of law and proximate cause, and the court erred in entering judgment in favor of appellee; (5), the insufficiency of the evidence to support the jury verdict to issues 1 through 22; and, (6), that the jury was guilty of passion, prejudice and sympathy in answering issues 27 through 75, and the court should have entered a judgment for the appellant. From what has already been said in this opinion, these points are without merit because the pleadings and the evidence are

fully sufficient to support the jury verdict in its entirety. The points are overruled.

By point 7, the appellant raises an issue of jury misconduct to the effect that the verdict was a quotient verdict. Hearing was had before the court on February 9, 1961. There was attached to the amended motion for new trial an affidavit by J. W. Tanner, one of the jurors. The affidavit, omitting the caption and the signature, reads as follows:

"We answered all of the issues submitted to us after entering the jury room down to the issue concerning the amount of damages. On one issue relative to the train whistle, we were some little time deciding. Upon the amount of damages to be awarded for the death of Mr. Chesher we agreed to write down on a slip of paper what each of us thought he would have brought home to his family had he not been killed. Then to total this amount, divide by 12, and that would be our verdict. We did this and Mrs. Kelly totaled the amount, divided by 12, and the figure arrived at was $42,500.00. After the total was arrived at it was checked by me and some of the other jurors, to see that the figures were correct. We followed this same procedure in arriving at the amount of damages that should be allowed for the first girl and after dividing the total amount by 12 the figure was $4,917.00. We used this same amount as to the other two girls. We followed the same procedure in arriving at the amount to be allowed for Thomas Chesher, the boy, and the amount came out at $7,-750.00. This was the method used in arriving at the amount of damages shown in our verdict.

"I have read this statement and it is true and correct."

At the hearing before the trial court, seven of the jurors testified. According to their testimony, there was no pre-agree-ment that they would divide the figures by twelve and be bound to use that as their verdict, though one of the jurors testified that they had the previous agreement, and agreed to be bound by the result of the quotient process.

Under Rule 327, T.R.C.P., a complaint or grounds of a motion for new trial alleging jury misconduct, one must not only prove the misconduct, but must show that the misconduct resulted in an injury. The appellant cites many cases in support of its points, but most cases cited are prior to 1941. It was in 1941 that Rule 327, T.R.C.P., was enacted and became the law in Texas.

Frankly, the verdict is a quotient verdict, but the jury did not have an agreement to be bound by the verdict, and after the figures were arrived at, the jury took a vote upon the figures and decided that the figures reached was a fair and just verdict. If the jury had been guilty of passion and prejudice, and had wanted to do an injury to the appellant, they could have put down figures and rendered a total judgment for the appellee for about $327,560.00. This, they did not do. The amount of the verdict ($67,436.00) seems to be extremely reasonable. A little less than one-fifth (1/5) of the amount sued for. According to the evidence, Mr. Chesher had a life expectancy of 37.3 years. He was making about $5,000.00 per year. Bearing in mind these figures, the jury could have, under the pleadings and the evidence, returned a verdict for the death of Mr. Chesher alone for $175,000.00. There is no set figure as to how much a minor child is worth. The appellee sued the appellant because of the loss of her children as follows: Judy Chesher, a girl, ten years of age, for $31,000.00; Thomas Darrel Chesher, a boy eight years of age, for $43,000.00; Connie Chesher, a girl four years of age, $37,000.00, and Patricia Chesher, a girl two years of age, $39,000.00 When we examine the law relative to jury misconduct on the quotient verdict, we cannot see where any injury was

done the appellant, and we do not feel that the trial court committed any error in failing to grant the motion for new trial. It was clearly shown at the hearing on the amended motion for new trial that none of the jurors were bound by the quotient verdict. The verdict was very reasonable. 53 Am.Juris. 710, Sec. 1030; 53 Am.Juris. 712, Sec. 1031; Schreiber et al. v. Pacific Coast Fire Insurance Company et al., 195 Md. 639, 75 A.2d 108, 20 A.L.R.2d 951, Anno. 958; Virginia Electric Power Co. v. Marks, 195 Va. 468, 78 S.E.2d 677, 39 A.L.R.2d 1201, Anno. 1208; 41–B Tex. Juris. 392, Sec. 316; 41–B Tex.Jur. 393, Sec. 317, 41–B Tex.Jur. 417, Sec. 334, 41–B Tex.Jur 777, Sec. 568; Morgan et al. v. State of Texas (Ct.Civ.App.), 343 S.W.2d 738, wr. ref., N.R.E.; 66 C.J.S. New Trial § 59, p. 188; Higginbotham v. O'Keefe (Ct.Civ.App.), 340 S.W.2d 350, wr. ref. N.R.E.; XII Baylor Law Review No. 4, 355–385. The point is overruled.

By its point 8, appellant complains of the action of the trial court in refusing to permit the appellant to make proof as to the misconduct of the jury in determining an issue by majority rather than unanimous vote. In its amended motion for new trial it alleged that special issue No. 6 was answered as the result of a majority vote. The appellant then alleged that special issue No. 6 being so answered, that the jury then answered special issues No. 20, 30, 37 and 40 in favor of the appellee. In the affidavit by Mr. Tanner, attached to the amended motion for new trial he said: "On one issue relative to the train whistle, we were some little time deciding." The appellee filed special exceptions to the amended motion for new trial in which she pointed out that the issues on jury misconduct as to answering the issue by majority vote were too vague to apprize the appellee as to the issue of jury misconduct, was not supported by affidavit, or affidavits of any of the jurors. Appellee also alleged that appellant failed to set forth any excuse for failure to attach affidavits; that the allegations constituted nothing but a fish-ing expedition; showed no excuse for failure to attach affidavits; that the allegations of determining the answer by majority vote was nothing more than a conclusion of the pleader; and, that the appellee denied any jury misconduct occurred during the deliberations in the case. The trial court heard the exceptions and sustained the same. The appellant did not request leave to insert the names of the jurors in the motion, nor to tender affidavits in support thereof. The trial court did permit the appellant to make proof in perfecting its bill of exceptions. We hold that the proof was insufficient to support the record on the allegations of jury misconduct. Hobbs et al. v. Slayton (Ct.Civ.App.), 265 S.W.2d 838, and authorities therein cited. The point is overruled.

No error appearing in the record, the judgment of the trial court is affirmed.