**MANCUSO v. L. GILLARDE CO.**

No. 655.

Municipal Court of Appeals for the
District of Columbia.

Oct. 12, 1948.

Alvin L. Newmyer, Jr., of Washington, D. C. (Alvin L. Newmyer and David G. Bress, both of Washington, D. C., on the brief), for appellant.

Louis M. Denit, of Washington, D. C. (J. L. Nellis and Coleman L. Diamond, both of Washington, D. C., on the brief), for appellee.

Before CAYTON, Chief Judge, and HOOD and CLAGETT, Associate Judges.

CLAGETT, Associate Judge.

This appeal involves the interpretation of certain provisions of regulations issued by the War Food Administrator under authority of the Perishable Agricultural Commodities Act of 1930, as amended.[1] It arose out of a dispute between the parties over a shipment of honeydew melons. After appellee (plaintiff in the trial court) had filed a formal complaint with the Department of Agriculture under the Act, both parties consented in writing to accept as final an "informal determination" to be rendered by three officials of the Regulatory Division of the Production and Marketing Administration of the Department. Subsequently those officials rendered what is described herein as an arbitration award in favor of appellee, but the award was rejected by appellant (defendant in the trial court). Appellee thereupon filed suit in the Municipal Court to collect the amount of the award. The trial court sustained the award and overruled a motion by appellant to amend his answer so as to assert a counterclaim for a breach of contract arising out of the same transaction. Appellant has appealed from the resulting judgment. Neither party questions the right of the arbitrators to make the award or the jurisdiction of the Municipal Court over the suit resulting therefrom.

The dispute arose when appellee sold to appellant 570 crates of standard honeydew melons of various sizes, "Pony Boy Brand", at $1.94 per crate "f. o. b. shipping point acceptance final." Appellant received instead only 322 crates of "Pony Boy Brand" melons and the remaining 248 crates were "Rosy Dawn Brand." The shipment started in California but was sold by appellee, a

---

[1] 7 U.S.C.A. § 499a et seq.

Chicago concern, to appellant, a large dealer doing business in the District of Columbia. The seller offered to take the "Rosy Dawn" melons back if necessary, but the buyer rejected the entire shipment and thereafter by order of the seller the melons were diverted to New York for sale. The contract price was approximately $1,105, but at the sale the melons only realized $740.86 and of that amount $740.45 was absorbed by freight and other charges, leaving net proceeds of only 41¢.

Appellant having refused to pay for the shipment, appellee made a formal reparation complaint to the Department of Agriculture. Under the Act invoked by this complaint, when a dealer licensed under the Act (both appellant and appellee were so licensed) rejects any perishable agricultural commodity bought or contracted to be bought by it in interstate commerce, the Secretary of Agriculture under certain conditions may award damages in favor of the seller.

After receipt of this complaint, the chief of the Regulatory Division, Fruit and Vegetable Branch of the Department, wrote to appellant enclosing a form which recited that many disagreements submitted under the Act had been settled by informal determination. At the bottom of the form was an agreement which was signed by both parties. This agreement recited: "The undersigned agrees to accept as final and comply with an informal determination rendered by your office in the matter of a disagreement with (blank) involving (blank)."

The award recited the facts of the controversy in detail. It was found that the shipment included 248 crates of "Rosy Dawn Brand" but that when sold in New York both brands brought approximately the same prices. Further, that federal market news reports indicated a decided decline in the market prices for California honeydews between the date of the contract and the date the shipment arrived, and also that this factor, together with probable progressive deterioration before the fruit was finally disposed of "may account in a measure for the negligible proceeds received by the seller."

The principal finding in the award was that in a purchase of perishable agricultural commodities made under a contract containing the condition "shipping point acceptance final," as in this instance, "the buyer has no right of rejection whatever and has no recourse against the seller because of any change in condition of the produce while in transit, even though a change may have been due to a lack of suitable shipping condition, but the buyer does have recourse for breach of contract, such as failure to receive the brand contracted. Clearly, the buyer failed to pursue the remedy provided in such cases and having done so, is precluded from claiming any loss due to the seller's breach of contract in including approximately 248 crates Rosy Dawn honeydews in the shipment."

Based upon this finding, the following conclusion was reached: "Under the circumstances outlined above, we conclude that the inclusion of Rosy Dawn honeydews in this shipment was a breach of contract by the seller. However the buyer in rejecting, has waived any right to claim damages because of the breach of contract and is accountable for the seller's loss."

A jury trial was demanded in the trial court but by agreement of counsel the only issues presented to the jury were whether the parties agreed to arbitration and also agreed to be bound by the same. The jury answered affirmatively questions propounded on these issues and an agreed statement on appeal recites that no appeal was being taken with respect to the special findings of the jury.

The issues presented for our determination are: First, whether the arbitration award, the submission being by its terms final, is open to attack upon any of the grounds alleged here; and, second, assuming that the award is open to attack upon the ground of a "manifest mistake of law," whether such a manifest mistake of law was made.

1. On the issue of whether the arbitration award is subject to attack, it is clear that to induce a court to interfere with such an award something more than error of judgment on the part of the arbi-

trators must be shown, such as corruption or gross mistake, either apparent on the face of the award or to be made out by evidence, and courts should be careful to avoid a wrong use of the word "mistake" and, by making it synonymous with mere error of judgment, assign to themselves an arbitrary power over awards.[2] However, the Supreme Court in a later decision has laid down the following rule:

"Where the award finds facts it is conclusive, where it finds or announces concrete propositions of law, unmixed with facts, its mistake, if one is made, could have been corrected in the court below, and can be corrected here. Where a proposition is one of mixed law and fact in which the error of law, if there be one, can not be distinctly shown, the parties must abide by the award.

"The award was also liable, like any other award, to be set aside in the court below, for such reasons as are sufficient in other courts: for exceeding the power conferred by the submission, for manifest mistake of law, for fraud and for all the reasons on which awards are set aside in the courts of law or chancery."[3]

Appellant urges that the arbitration award herein was based upon a clear or manifest error of law and hence should not stand. It therefore becomes necessary for us to determine the second point.

2. In connection with its claim that the award was based upon a manifest error, appellant claims, first, that under the Uniform Sales Act, Code 1940, § 28—1101 et seq., appellant was justified in rejecting the shipment on the ground that the goods shipped were different from the goods ordered. In the view that we take of the case, however, this point is not at issue, or if at issue it was determined in the arbitration award and is not subject to review. The award by its specific terms determined that appellee had breached its contract by including approximately 248 crates of Rosy Dawn honeydews in the shipment and under ordinary circumstances would have been liable to appellant for such breach of contract. It was the conclusion of the arbitrators that appellant in rejecting the shipment had waived any right to claim such damages, which constituted the principal "manifest mistake of law" alleged by appellant. It is upon this point, as we see it, that decision of the case depends.

Such decision involves the meaning of the term "f. o. b. acceptance final." The regulations adopted pursuant to the Perishable Agricultural Commodities Act of 1930, as amended, define the term as meaning "that the buyer accepts the produce f. o. b. cars at shipping point without recourse."[4] As already indicated, it was held in the arbitration award that under this definition of the term a buyer has no recourse against a seller because of any change in condition of the produce while in transit, but that the buyer does have recourse for breach of contract, such as failure to receive the brand contracted for, and that where a buyer fails to pursue the remedy provided in such cases and instead rejects the shipment it is precluded from claiming any loss due to the seller's breach of contract. Appellant urges that this decision is manifestly wrong and hence that the trial court erred both in giving judgment for appellee in accordance with the award and particularly in rejecting appellant's proffered amendment to his answer in which, by way of counterclaim, he sought recoupment in damages for appellee's breach of contract.

The point has been decided very recently by the United States Circuit Court of Appeals for the First Circuit. L. Gillarde Co. v. Joseph Martinelli & Co., 168 F2d 276, 279. That case involved a shipment of cantaloupes on what the court found was the same basis as "f. o. b. acceptance final." The cantaloupes were sold as "U. S. No. 1 grade at shipping point," but subsequently it was found that they were not of such grade, and the buyer instead of selling them and claiming damages from the seller rejected the shipment. There as here the buyer relied upon the Uniform Sales Act

[2] Burchell v. Marsh et al., 17 How. 344, 15 L.Ed. 96; cf. York and Cumberland Railroad Co. v. Myers, 18 How. 246, 15 L.Ed. 380; Campbell v. Campbell, 44 App.D.C. 142, certiorari denied 242 U.S. 642, 37 S.Ct. 114, 61 L.Ed. 542.

[3] United States v. Farragut, 22 Wall. 406, 420, 22 L.Ed. 879.

[4] 7 Code Fed.Reg. § 46.24 (m).

providing that a buyer may reject goods if there has been a breach of warranty. The court held, however, that when terms which have been given a definite meaning under the statute are used by licensees it cannot later be maintained that a different meaning was intended. The court concluded that the buyer had no right of rejection. The court went on to hold, however, that it saw no reason why the buyer's mistake as to his remedy should cause it to forfeit a remedy which it would otherwise have and directed that evidence be taken regarding the buyer's damages by reason of the wrongful shipment. It is this same remedy which is urged here by appellant in connection with its proffered counterclaim.

Subsequent to its first decision, however, the court granted a rehearing on the point of whether the buyer should be able to prove damages by way of recoupment and thereafter reversed its original decision on this point. L. Gillarde Co. v. Joseph Martinelli & Co., 1 Cir., 169 F.2d 60, 61. In its final opinion the court said: "The Act was intended to prevent produce from becoming distress merchandise and to protect sellers who often were at a great distance from the buyer. In our original opinion we stated that even though the buyer should be allowed to recoup for the breach by the seller, the buyer would have to bear any loss resulting from its wrongful rejection. It appeared to us that the seller would be protected from any loss caused by rejection in this way. But it is now called to our attention that the Department of Agriculture, which administers the Act and which is familiar with the evils the Act was intended to prevent, believes that to allow a buyer who rejects wrongfully to recoup would drastically reduce the effectiveness of the Act by removing much of the sanction against wrongful rejection. Upon consideration of the petition for rehearing and the briefs submitted, we think that since the Department has interpreted its regulation in a manner which it thinks necessary to carry out the purposes of the Act, and since the interpretation has been adhered to for over ten years, it should not be disregarded. Under these circumstances we hold that we should not substitute our interpretation merely because our original thought was that such a drastic interpretation is not needed to carry out the intent of the Act. The Department's interpretation is not plainly erroneous; it is a possible and reasonable interpretation of the regulation, even if not the only possible one. We therefore think it should be followed, cf. Bowles v. Seminole Rock & Sand Co., 1945, 325 U.S. 410, 65 S.Ct. 1215, 89 L.Ed. 1700, and the opinion amended by striking out the two paragraphs preceding the final paragraph."

We agree with the holding just quoted that the interpretation made by the Department of Agriculture, which is the same interpretation as that embodied in the arbitration award here under attack, "is not plainly erroneous; it is a possible and reasonable interpretation of the regulation, even if not the only possible one." In view of this conclusion it is clear that the arbitration award was not a manifest mistake of law and hence that the trial court was correct in enforcing such award.

Affirmed.