Floors, Incorporated *vs.* B. G. Danis of New England, Inc. & another.[1]

Suffolk. November 7, 1979. — March 6, 1980.

Present: Hennessey, C.J., Quirico, Kaplan, Wilkins, & Abrams, JJ.

*Public Works,* Counsel fees. *Arbitration,* Counsel fees, Confirmation of award. *Damages,* Counsel fees.

In the circumstances, it was proper for a judge to confirm an arbitration award in the context of a preexisting action under G. L. c. 149, § 29, which had been stayed pending arbitration. [95]

Where a subcontractor sued on the contractor's bond under G. L. c. 149, § 29, and the action was then stayed pending arbitration proceedings which resolved the underlying contract dispute in favor of the subcontractor, the subcontractor was entitled to recover only those legal fees incurred in connection with the action under § 29 and could not recover those incurred in the arbitration proceedings. [95-101]

Civil action commenced in the Superior Court on May 28, 1976.

The case was heard by *Morse,* J.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Richard W. MacAdams* for the defendants.

*Sally A. Corwin* for the plaintiff.

Quirico, J. This case presents two questions: (1) whether a suit on a contractor's bond under G. L. c. 149, § 29 (as amended through St. 1972, c. 774, § 5), may be used as a vehicle to confirm an arbitration award handed down pursuant to G. L. c. 251; and (2) whether in such a suit a subcontractor may recover legal fees incurred in arbitration proceedings which resolved the underlying contract dispute in his favor. We hold that (1) an arbitration award may be

[1] Seaboard Surety Company.

confirmed in the context of a preexisting action between the parties, and that (2) attorneys' fees may not be recovered for arbitration proceedings absent such an agreement between the parties.

The appellee, Floors, Incorporated (Floors), is a subcontractor which entered into two subcontracts with a general contractor, appellant B. G. Danis of New England, Inc. (Danis), one on December 27, 1972, to provide resilient flooring, and another on August 7, 1973, to provide special flooring and carpeting. Both contracts were in connection with Danis's general contract to build a public high school in Salem, and each included an "all disputes" arbitration clause, set forth below.[2] Floors furnished labor and materials under the contracts, plus certain "extras" agreed to by the parties. Floors finished work on the first contract in November, 1975, and on the second contract in March, 1976, and demanded payment. Danis paid part of the price requested as to each contract, but refused to pay the balance. On May 14, 1976, Floors demanded arbitration under the contracts and on May 28, 1976, it filed an action in Superior Court seeking relief under G. L. c. 149, § 29, on a public construction bond which Danis had provided pursuant to that statute and on which appellant Seaboard Surety Company (Seaboard) was surety. The complaint stated that it was "filed as a provisional remedy under c. 149, § 29 and is without prejudice to, nor waiver of, the arbitration proceeding now pending," and further stated that "[t]his action is to be stayed pending the arbitration award." Danis and Seaboard (defendants) answered, alleging that Floors had failed to complete certain aspects of the contracts, and stating that they and Floors were in agreement that the ac-

---

[2] "All claims, disputes and other matters in question arising out of, or relating to, this Contract or the breach thereof . . . shall be decided by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association then obtaining . . . . This agreement to arbitrate shall be specifically enforceable under the prevailing arbitration law. The award rendered by the arbitrators shall be final and judgment may be entered upon it in accordance with applicable law . . . ."

tion should be stayed pending arbitration. No other motion for a stay was filed, but the parties proceeded to arbitration.

On February 25, 1977, the arbitrators awarded $21,000, including interest, to Floors, and denied Danis's counterclaims relative to extra work due under the contract. Floors then filed in the pending c. 149, § 29, action a motion to confirm the arbitration award and a motion for attorneys' fees, as well as a motion for summary judgment against the surety. The defendants Danis and Seaboard filed objections to these motions and filed a motion to dismiss the action because an award had been rendered. After a hearing a judge of the Superior Court confirmed the arbitration award of $21,000 and, after holding a further hearing, he awarded an additional $6,300 in attorneys' fees to Floors. The defendants appealed to the Appeals Court, which upheld the hearing judge in his confirmation of the award, but reversed the award of attorneys' fees to the extent that it included payment for services rendered in the arbitration proceedings. The Appeals Court held that "so much of the legal fees as were attributable to the arbitration should not have been allowed." *Floors, Inc.* v. *B. G. Danis of New England, Inc.,* 7 Mass. App. Ct. 356, 358 (1979). We granted Floors' petition for further appellate review. For the reasons stated below, we agree with the result reached by the Appeals Court.

General Laws c. 149, § 29, requires contractors in public construction contracts to give performance and payment bonds to public authorities, and permits actions on such bonds by subcontractors and materialmen. As amended in 1972, the statute provides in part that "[a] decree in favor of any claimant under this section shall include reasonable legal fees," and sets standards for the determination of their amount. St. 1972, c. 774, § 5. Chapter 774 of the Acts of 1972 is entitled, "An Act expediting payments to general contractors and to subcontractors and improving the flow of funds in the construction industry." We had previously held that G. L. c. 149, § 29, "is a remedial statute which should be construed broadly to achieve the purpose of af-

fording security to subcontractors and materialmen on public works." *Manganaro Drywall, Inc.* v. *White Constr. Co.,* 372 Mass. 661, 664 (1977), citing *LaBonte* v. *White Constr. Co.,* 363 Mass. 41, 45 (1973). *American Air Filter Co.* v. *Innamorati Bros.,* 358 Mass. 146, 148-151 (1970).

Commercial arbitration is governed by G. L. c. 251, which, as totally revised by St. 1960, c. 374, is substantially similar to the Uniform Arbitration Act.[3] In any event, the differences between G. L. c. 251 and the Uniform Arbitration Act do not affect the result in this decision. Section 10 of c. 251 provides in relevant part: "Unless otherwise [agreed], the arbitrators' expenses and fees, together with other expenses, *not including counsel fees,* incurred in the conduct of the arbitration, shall be paid as provided in the award" (emphasis supplied). Section 11 provides for applications to confirm an award. Sections 12 and 13 provide for applications to vacate, modify, or correct an arbitration award, on certain specified grounds.[4] Section 15 states in relevant part that "an application to the court under this chapter shall be by motion and shall be heard in the manner and upon the notice provided by law or rule of court for the making and hearing of motions. . . . [N]otice of an initial

---

[3] For the text of the Uniform Arbitration Act, and variation notes and annotation materials as to this Commonwealth, see 7 U.L.A. §§ 1-25 (Master ed. 1978).

[4] Section 13 of c. 251, as amended through St. 1972, c. 200, § 2, reads in part as follows: "(*a*) Upon application made within thirty days after delivery of a copy of the award to the applicant, the court shall modify or correct the award if:— (1) there was an evident miscalculation of figures or an evident mistake in the description of any person, thing or property referred to in the award; (2) the arbitrators have awarded upon a matter not submitted to them and the award may be corrected without affecting the merits of the decision upon the issues submitted; or (3) the award is imperfect in a matter of form, not affecting the merits of the controversy. (*b*) If the application is granted, the court shall modify and correct the award so as to effect its intent and shall confirm the award as so modified and corrected; otherwise, the court shall confirm the award as made."
Nowhere in this section is a court given authority to add to an award for reasons other than those stated in § 13 (*a*), nor does that subsection allow a court to increase an award by adding thereto attorneys' fees based upon a different statutory right of action.

application for an order [confirming, modifying, correcting, or vacating an award] shall be served in the manner provided by law for the service of an original writ of summons."

1. The defendants argue that §§ 11 and 15 require commencement of a new proceeding to confirm an arbitration award, and that to allow confirmation to occur in the context of a proceeding previously filed does violence to the statutory scheme. Floors contends that the service of process attendant to its original c. 149, § 29, complaint was sufficient "notice of an initial application for an order," since it had previously served on Danis a demand for arbitration, and a request for a stay of the action pending arbitration was included in the complaint. It argues that therefore it was proper for it to file a motion to confirm within that action. The defendants maintain that because the action was filed before the award was made, the earlier service of process cannot satisfy the statute. They do not allege, however, that they were inadequately notified of Floors' motion to confirm the arbitration award, or of its other motions.

The apparent purpose of G. L. c. 251, § 15, is to ensure that parties have adequate notice and opportunity to be heard in court proceedings following an arbitration award. In the present case, all parties to the arbitration are also parties to the action which covers the matters submitted to arbitration and which has been stayed pending arbitration. They have participated in and have been represented by counsel at the arbitration proceedings; and they have received proper notice "in the manner and upon the notice provided by law or rule of court for the making and hearing of motions [Mass. R. Civ. P. 5 (a), 365 Mass. 745 (1974)]." In these circumstances, we see no reason to require that an application to confirm the award be accompanied by the further formalities associated with the serving of a new complaint. We hold therefore that the judge's action in confirming the arbitration award was proper.

2. The second question before us is whether the language or the legislative purpose of § 29, as amended, permits a court to award legal fees incurred in commercial arbitration

proceedings by Floors, a claimant under the section. The defendants argue that § 10 of c. 251 indicates an express legislative decision that attorneys' fees not be awarded for arbitration proceedings. Floors replies that § 10 applies only to arbitrators, and does not affect the power of a court to add attorneys' fees at or after the time it confirms the award. We do not believe that the language of § 10 is intended merely to expedite proceedings before arbitrators by removing from their nonjudicial consideration the potentially troublesome item of legal fees. It also discloses a principal purpose to further the speedy, efficient, and uncomplicated resolution of business disputes with very limited judicial intervention or participation. "[T]he court should not interject itself or its practice into arbitrations unless required to do so by statutory provision or necessity." *Cavanaugh* v. *McDonnell & Co.,* 357 Mass. 452, 456 (1970), quoting *In re Schwartz,* 127 Misc. 452, 454-455 (N.Y. Sup. Ct. 1925).

The prefatory comment to the 1954 draft of the Uniform Arbitration Act, which included the present § 10, stated that "[c]ourt intervention [in arbitration] occurs primarily when a party refuses to arbitrate and when the court is asked to confirm, modify or vacate the award. The procedure serving these purposes must be prompt and simple or the values of arbitration will be largely dissipated through prolonged litigation." Handbook of the National Conference of Commissioners on Uniform State Laws 204 (1954).

We should not, and will not encumber the statutory arbitration procedure by appending to it any of the incidents of litigation, absent a specific decision by the Legislature to do so. *Cavanaugh* v. *McDonnell & Co., supra.*[5] The language of G. L. c. 149, § 29, does not state whether the legal fees it authorizes for successful claimants shall extend to cover

---

[5] In *Cavanaugh* v. *McDonnell & Co.,* 357 Mass. 452 (1970), this court held that discovery could not be ordered in aid of arbitration proceedings. The Legislature has since amended c. 251, § 7, to permit certain types of discovery in the discretion of the arbitrators. St. 1978, c. 314, § 1.

legal services rendered in arbitration pursuant to prior agreement, separate and apart from legal services rendered in the court proceedings on the surety bond. We find nothing in the language or the legislative history of c. 149, § 29, as amended through St. 1972, c. 774, § 5, which indicates that the Legislature intended that section to overpower the policy expressed in c. 251, § 10, against the award of attorneys' fees in arbitration proceedings. Statute 1972, c. 774, codified, with minor changes, the interim report of a special commission of the Legislature which since 1965 had been studying certain proposals governing contractors and subcontractors in public works projects. That report, 1972 House Doc. No. 6336, combined all or significant parts of three bills filed in 1972 and in prior years. A member of that special commission sponsored one of these bills, which included the provision for legal fees and which is now before us (1972 House Doc. No. 1626). He filed another bill in 1972 which would amend §§ 12 and 13 of c. 251 to shorten from ninety to fifteen days the time in which one could apply to modify or vacate an arbitration award. 1972 House Doc. No. 1624. A modified version of this proposal, shortening the time period from ninety to thirty days, was enacted that year. St. 1972, c. 200, § 2.

Floors stresses the fact that the Legislature inserted c. 251, § 2A in 1977 (St. 1977, c. 414). This section permits claimants under c. 149, § 29, to consolidate arbitration proceedings in the same manner as court actions may be consolidated under § 29 or applicable provisions of the Massachusetts Rules of Civil Procedure. Floors maintains that the Legislature was aware that such claimants would be arbitrating disputes under the umbrella of their statutory bond actions. While this may be true, we consider more indicative of the Legislature's intent concerning subcontractors' legal fees in arbitration, the fact that, when adding the legal fees provision in 1972, the Legislature did not amend § 10 or § 13 of c. 251 to allow either an arbitrator or a court to grant such fees. This was the case despite the fact that in the same year it amended other sections of c. 251, as noted

above, in a way apparently favorable to subcontractors resorting to arbitration for prompt recovery of amounts due but withheld from them.[6]  Contrary to Floors' contention, the fact that the amendment to c. 149, § 29, allowed attorneys' fees to *"any* claimant" (emphasis supplied) who prevails is not relevant to the question whether the fees were meant to reimburse the claimant for legal costs incurred in arbitration, in addition to those it incurred in the bond action.

Floors argues that c. 149, § 29, affords a "provisional" remedy to effectuate an arbitration award, like the use of a bill to reach and apply which was approved in *Salvucci* v. *Sheehan,* 349 Mass. 659 (1965).  It contends that the entire arbitration process becomes a subsidiary part of the action filed in court, similar to a reference to a master, and that the court's continuing equity jurisdiction over the action despite the stay pending arbitration permits Floors to "clinch [its] victory by a judgment" in court which adds legal fees to the award (see *Murray Oil Prods. Co.* v. *Mitsui & Co.,* 146 F.2d 381, 383 [2d Cir. 1944]).

The defendants contend that this concept of arbitration was rejected by the United States Supreme Court in *Bernhardt* v. *Polygraphic Co. of America, Inc.,* 350 U.S. 198 (1956) (holding that arbitration affected substantive rights under the "substance or procedure" test of *Erie R.R.* v. *Tompkins,* 304 U.S. 64 [1938]).  They argue that an action stayed pending arbitration merges with the arbitration award once the latter is confirmed, leaving no dispute remaining before the court.  They further maintain that a "provisional" remedy such as an action under c. 149, § 29,

---

[6] We note that Texas, in enacting a version of the Uniform Arbitration Act in 1965, rewrote § 10 of that act to provide in part that "[a]ttorneys fees shall be awarded by the arbitrators as additional sums required to be paid under the award only if provided for in the agreement to arbitrate or provided by law as to any recovery in a civil action in the district court on such a cause of action on which the award in whole or in part is based." Tex. Rev. Civ. Stat. Ann. tit. 10, art. 233 (Vernon 1973).  The act in Texas does not, however, apply to construction contracts.  *Id.* at art. 224.

or a bill to reach and apply, achieves significance independent of an arbitration award settling the underlying contract dispute between the parties only when the judgment on the award is or threatens to be unsatisfied. In support of this contention they cite two cases decided under the Florida mechanics' lien statute, *Beach Resorts Int'l, Inc.* v. *Clarmac Marine Constr. Co.,* 339 So. 2d 689 (Fla. App. 1976), and *Oakdale Park, Ltd.* v. *Byrd,* 346 So. 2d 648 (Fla. App. 1977). In these cases legal fees granted by statute for lien foreclosure actions were denied to claimants who won arbitration awards pursuant to contractual arbitration agreements. The Florida courts looked to the "nature of the recovery," and found it to be arbitration rather than lien foreclosure in the absence of any indication that the party winning the award had any need further to enforce his judgment in the lien proceedings.

We agree with this reasoning. Arbitration provides a simplified procedure for the settling of commercial disputes. See Pirsig, The New Uniform Arbitration Act, 11 Bus. L. (No. 3) 44-51 (April 1956). An arbitration award handed down pursuant to proper procedures and properly confirmed is binding on the parties and provides the measure of recovery on all claims properly within the submission. G. L. c. 251, § 1. *McGovern* v. *Middlesex Mut. Ins. Co.,* 359 Mass. 443 (1971). *Glenn Acres, Inc.* v. *Cliffwood Corp.,* 353 Mass. 150, 154 (1967). *Boyden* v. *Lamb,* 152 Mass. 416, 419 (1890). *Kelleher* v. *Cersosimo,* 2 Mass. App. Ct. 904, 905 (1974). While subcontractors are free to file actions under c. 149, § 29, at any time allowed by that statute, the "provision" which requires resort to that "provisional" remedy is the necessity of obtaining recovery on a confirmed award from a contractor's statutory bond. The simple expedient of filing such an action does not change the necessity of arbitrating a dispute where arbitration has been agreed to. G. L. c. 251, § 1. *Itek Corp.* v. *McEnness,* 340 Mass. 409, 412 (1960). See *Warren Bros.* v. *Cardi Corp.,* 471 F.2d 1304 (1st Cir. 1973). Legal fees incurred while arbitrating or acting to confirm, modify, vacate or correct an

arbitration award are simply not the direct result of the right of action created by c. 149, § 29, even though such arbitration proceedings may settle the underlying dispute and render unnecessary further pursuit of the action under c. 149, § 29. Legal fees incurred in filing the complaint and obtaining judgment in the statutory bond action in the present case may be recovered, under the legal fees provision of § 29, while fees associated with obtaining and confirming the arbitration award may not.

This practice will result in consistency of application regardless whether a general contractor files an action on the contract against a subcontractor, before or after the latter files an action on his claim under c. 149, § 29. The opposite decision could result in a situation where, if a dispute arises under a public works contract, a general contractor bound by a contractual arbitration clause might be tempted to file an action on the contract before the subcontractor can file an action under c. 149, § 29. The contract action would then be stayed pending arbitration, and the general contractor might later attempt to use it as a vehicle for challenging or confirming an arbitration award, thus preventing the subcontractor from confirming the award under his c. 149, § 29, suit and winning reimbursement of his arbitration-related legal expenses. Such a needless race to court and proliferation of litigation to the detriment of agreed arbitration proceedings should be avoided.

Our result will not unfairly create two classes of subcontractors, one with and another without arbitration provisions in their contracts, as Floors contends. The advantages of arbitration, including a speedy determination of contract rights and, where warranted, recovery of money owed, will presumably continue to encourage commercial parties to employ it.[7]

---

[7] Floors contends that arbitration provisions are, in effect, mandatory because public bidding authorities often include them in public construction contracts offered for bids. We note that in 1972 a bill was filed in the Legislature, House Doc. No. 1628, which would have required the inclusion of arbitration provisions in such contracts. This provision did not become the law then, and has not since.

In the absence of special agreement to the contrary, legal fees arising out of arbitration have never been awarded in the past, and we shall not depart from this practice in the absence of a legislative determination to do so. See *Kohl* v. *Silver Lake Motors, Inc.*, 369 Mass. 795, 801 (1976).

We hold that the only legal fees which may be recovered under G. L. c. 149, § 29, are those incurred directly in pursuit of that statutory cause of action.

The judgment of the Superior Court is reversed, and the case is remanded to the Superior Court for the entry of a new judgment (1) confirming the arbitration award and (2) awarding legal fees only for services rendered in connection with the action under c. 149, § 29.

*So ordered.*