720 A.2d 912

**Marcel BLITZ**

v.

**BETH ISAAC ADAS ISRAEL CONGREGATION.**

**No. 72, Sept. Term, 1997.**

Court of Appeals of Maryland.

Sept. 14, 1998.

Decision Clarified Dec. 14, 1998.

Aaron I. Lubling (Aaron I. Lubling, P.C., on brief), Baltimore, for petitioner.

Brian H. Silver, Towson, for respondent.

Argued before BELL, C.J., ELDRIDGE, RODOWSKY, CHASANOW, RAKER and WILNER, JJ., and ROBERT L. KARWACKI, Judge (Specially Assigned).

BELL, Chief Judge.

The question we are asked to answer in this case is whether, pursuant to Maryland Code (1974, 1995 Repl.Vol.), § 3–228(b) of the Courts and Judicial Proceedings Article, the Maryland

Uniform Arbitration Act (the "Act"), the prevailing party in a binding arbitration proceeding may recover reasonable attorneys' fees when the losing party's unjustified refusal to comply with the award requires the prevailing party to institute and successfully prosecute an action in order to confirm and enforce the arbitration award.

Rabbi Marcel Blitz ("the petitioner") and the Beth Isaac Adas Israel Congregation, ("the respondent" or "the Synagogue"), entered into a written arbitration agreement in an attempt to resolve a dispute concerning the petitioner's service as the Synagogue's rabbi. The agreement provided for the submission of the dispute to an arbitration panel consisting of three rabbis and called a Beth Din.[1] In addition to naming the three rabbis, the agreement also stated that "[i]t is further understood that the Beth Din is binding on both parties, is final and with no appeal." In an unanimous decision, the arbitration panel awarded the petitioner $5000.00 payable in two installments. One installment of $3,000 was due for payment by July 9, 1994, and the second installment of $2,000, by July 28, 1995. Although the respondent did not seek to vacate, modify, or correct the award and despite demand by the petitioner, the Synagogue did not make either of the installment payments as required.

Consequently, the petitioner filed, in the Circuit Court for Baltimore County, a Petition to Confirm and Enforce Arbitration Award and Complaint for Damages.[2] In addition to the $5,000.00 awarded by the arbitration panel, he requested "the

---

1. A Beth Din is "a Jewish court proceeding before a panel of three rabbinic judges." *Kovacs v. Kovacs,* 98 Md.App. 289, 295, 633 A.2d 425, 428(1993), *cert. denied,* 334 Md. 211, 638 A.2d 753 (1994). Maryland courts recognize the validity of arbitration proceedings at a Beth Din, even when the proceedings are not in strict compliance with the Act, so long as the parties knowingly and voluntarily agree to the arbitration procedures. *Id.* at 304, 633 A.2d at 433.

2. The petitioner initially filed suit in the District Court of Maryland sitting in Baltimore County. The Synagogue's motion to dismiss the petitioner's suit on the ground that the District Court lacked jurisdiction to confirm and enforce an arbitration award was granted, and the suit was dismissed without prejudice.

cost of this petition, of any subsequent proceedings, disbursements and reasonable attorneys' fees." The petitioner also filed a Motion for Summary Judgment. When the respondent failed to respond timely to the petition or to file an opposition to the summary judgment motion, the court entered summary judgment for the amount requested, "plus the cost of this action and any attorneys' fees incurred by the [petitioner] in connection with the [petitioner's] Petition to be determined by the Court upon submission of sufficient evidence in support thereof." On May 15, 1996, the day after the Summary Judgment Order was signed and the day before it was filed, the respondent filed its Response To Motion For Summary Judgment, a Petition to Vacate or Modify, and an Answer and Petition For Modification. In the Answer and Petition For Modification, the respondent alleged only that "the arbitrators exceeded their authority in this matter."

The petitioner submitted, in compliance with the Summary Judgment Order, his affidavit in support of attorney's fees in the amount of $1200.00 and costs and disbursements of $415.00, totaling $1,615. The circuit court entered judgment in favor of petitioner in the amount of $415.00, representing the costs and disbursements, but refused to award attorney's fees. The record does not reflect the basis for the refusal.[3] When the petitioner's Motion for Reconsideration was denied without a hearing, he noted his appeal to the Court of Special Appeals.

In that court, the petitioner argued, *inter alia,* that the terms "costs" and "disbursements," as used in § 3–228(b) includes attorney's fees. The Court of Special Appeals rejected that argument, holding instead that "the Legislature did not intend in C.J. § 3–228(b) to permit recovery of legal fees,

---

3. The court order referred to § 3–228 as the basis for the award of attorneys' fees as well as costs. That section, however, does not expressly mention attorneys' fees as being recoverable; in fact, subsection (b) only mentions costs and disbursements. The Court of Special Appeals apparently assumed that the trial court refused to award attorneys' fees because § 3–228 did not authorize them and decided the case on that basis.

under the guise of 'costs' or 'disbursements,' incurred in confirming and enforcing an arbitration award." *Blitz v. Beth Isaac Adas Israel Congregation*, 115 Md.App. 460, 481, 694 A.2d 107, 117 (1997). Aware that § 3–232 of the Act provides for the interpretation and construction of the Act "as to effectuate its general purpose to make uniform the law of the states which enact it," and that other jurisdictions have construed § 3–228(b) as the petitioner does, the court, in affirming the judgment of the trial court, stated:

> "We decline to move like lemmings toward the precipice of an erroneous interpretation of an unambiguous statute by summarily subscribing to uniformity for uniformity's sake, when other sound principles of statutory construction mandate a different result. Arbitration is a creature of contract and statute, and the role of the courts in the process has been narrowly tailored. Parties may protect themselves from bad faith refusals to abide by arbitration decisions and frivolous actions to modify or vacate awards by providing for those eventualities in the arbitration agreement itself."

*Id.* at 487, 694 A.2d at 120. At the request of the petitioner, we granted certiorari to consider this important issue. We shall reverse.

## I

■ The petitioner argues that he is entitled to an award of the attorneys' fees he incurred in confirming and enforcing the arbitration award, as well as for the attorneys' fees he has incurred in connection with this appeal. He relies on both § 3–228 and § 3–232. Section 3–228 provides:

> "(a) Entering of judgment; enforcement of judgment.—
>
> (1) If an order confirming, modifying, or correcting an award is granted, a judgment shall be entered in conformity with the order.
>
> (2) The judgment may be enforced as any other judgment.
>
> (b) Costs and disbursements.—A court may award costs of the petition, the subsequent proceedings, and disbursements."

Although subsection (b) uses broad terms to describe what expense items the court may award in connection with a confirmation petition, it does not specifically mention attorneys' fees. The broad language of § 3–228(b), in particular, the word, "disbursements," the petitioner argues, encompasses the attorneys' fees incurred by a party who, because the losing party refuses to pay, is required to confirm an arbitration award. He points out that the courts that have construed § 3–228 have so interpreted "disbursements." Furthermore, the petitioner submits, to be effective, uniform acts must be interpreted uniformly and consistently by the States that adopt them. In support of that proposition, the petitioner cites § 3–232. That section provides: "This subtitle shall be so interpreted and construed as to effectuate its general purpose to make uniform the law of the states which enact it." Maryland law is consistent. *See, e.g., Johnson v. Hall,* 283 Md. 644, 392 A.2d 1103 (1978); [4] *Continental Oil Co. v.*

---

**4.** At issue in that tax case was The Uniform Estate Tax Apportionment Act, Maryland Code (1988, 1993 Cum.Supp.), § 7–308 of the Tax General Article, then codified as Md.Code (1974), § 11–109 of the Estates and Trusts Article. The meaning of two subsections of the Act, namely,

"(b) Persons among whom tax to be apportioned. The (federal and Maryland estate taxes) shall be apportioned among all persons interested in the estate. The apportionment shall be made in the proportion that the value of the interest of each person interested in the estate bears to the total value of the interests of all persons interested in the estate.

\* \* \* \* \* \*

"(k) Applicability. Except as otherwise provided in the will, or other controlling instrument, the various provisions of this section shall apply to the apportionment of, and contribution to, the federal and Maryland estate taxes,"

was central to the decision. Having observed that "[i]t is evident from a reading of subsection (k) of the act that the application of the rule of apportionment set out in subsection (b) is mandatory, unless the will evinces an expression of intent to the contrary, *Johnson v. Hall,* 283 Md. 644, 648, 392 A.2d 1103, 1106 (1978), the Court proceeded to interpret a clause in the will consistently with the minority view. Noting the direction in § 11–109(i) of the Act that those of its terms that "are uniform with statutes enacted in other states shall be so construed as to effectuate their purpose to make uniform the laws of those states which enact such provisions," this Court commented:

*Horsey,* 177 Md. 383, 385, 9 A.2d 607, 608 (1939) ("Uniformity of Maryland decisions with those applying the same law in other states is generally to be sought."); *Whitcomb v. Nat. Exchange Bank,* 123 Md. 612, 616, 91 A. 689 (1914). *See also Williams Constr. v. Constr. Equip.,* 253 Md. 60, 63, 251 A.2d 864, 865 (1969) ("The interpretation given a statute in the jurisdiction in which it was first adopted is presumed to have been adopted with it, or should be given great weight."); *Public Service Comm'n of Maryland v. Balto. Transit Co.,* 207 Md. 524, 534, 114 A.2d 834, 838 (1955) ("Where a particular statute has been adopted in one State from the statute of another State, after a judicial construction has been given to it in the other State, it will be presumed that the construction was adopted with it."). The petitioner thus urges this Court to give to the word "disbursements" the same meaning it has been given by courts in other jurisdictions.

The respondent's position mirrors the reasoning of the Court of Special Appeals. That court concluded that the word "disbursements" does not include attorney's fees. While it acknowledges and accepts the uniformity direction in § 3–232, *Blitz,* 115 Md.App. at 482, 694 A.2d at 118, it believes that to apply it so as to permit the recovery of attorneys' fees in confirmation of an arbitration award proceedings, given the language of that section, would conflict with well established rules of statutory construction.[5] *Id.* at 477, 694 A.2d at 115.

---

"In rendering our decision in this case, however, we do not think we have violated the dictates of that subsection. Here, there is no dispute with reference to the meaning of the statute for, as we have already established, all agree that under subsection (k) of section 11–109, the statute's provisions apply unless the decedent in her will clearly and unambiguously indicates a contrary intent. The only real issue is in the construction of the will, a question which is to be answered under the well-established principles used in this State to discern any testator's intent with regard to the disposition of his property."

*Id.* at 653, 392 A.2d at 1109.

5. Indeed, as the intermediate appellate court interprets it, the uniformity construction is just another rule of statutory construction:

"In reaching our decision in this case, we must reconcile two conflicting canons of statutory construction. The first is the dictate

In arriving at that conclusion, the Court of Special Appeals points out that § 3–221 of the Act, relating to "Expenses and Fees," expressly addresses attorneys' fees, making their award dependent upon the provisions of the arbitration agreement.[6] Thus, the court submits:

> "The construction we have been asked [by the petitioner] to give to the ... Act would engraft upon the statute a meaning not evident from its plain language or legislative intent. Further, such an interpretation would require us to ignore well honed principles of statutory construction."

*Id.* at 478, 694 A.2d at 116. The well honed principles of statutory construction to which the court referred include that a statute must be read as a whole, so that all provisions are considered together and, to the extent possible, reconciled and harmonized. *Id.* at 480, 694 A.2d at 116. The intermediate appellate court also recognized that the "power to award attorney's fees, being contrary to the established practice in this country, may be expressly conferred but will not be presumed from general language." *Id.* at 481, 694 A.2d at 116, quoting *Talley v. Talley*, 317 Md. 428, 438, 564 A.2d 777, 782 (1989). In its view, therefore,

> "[t]he specific reference to attorney's fees in C.J. 3–221, coupled with its omission in C.J. § 3–228(b), leads us to conclude that the Legislature did not intend in C.J. § 3–228 to permit recovery of legal fees, under the guise of 'costs' or 'disbursements,' incurred in confirming and enforcing an

---

that we may not read. into a statute a meaning that is not expressly stated or clearly implied. The second is the precept that we strive to construe a Uniform Act, such as this one, so as to conform with other jurisdictions."
*Blitz v. Beth Isaac Adas Israel*, 115 Md.App. 460, 477, 694 A.2d 107, 115 (1997) (Citations omitted).

**6.** Section 3–221 provides:

"(a) Arbitrators.—Unless the arbitration agreement provides otherwise, the award shall provide for payment of the arbitrator's expenses, fees, and any other expense incurred in the conduct of the arbitration.
(b) Counsel Fees.—Unless the arbitration agreement provides otherwise, the award may not include counsel fees."

arbitration award. Surely, if the Legislature wanted to authorize an award of legal fees under such circumstances, it would have expressly said so, particularly in view of the principles of the 'American Rule.[7]' "

*Id.*

 The question this Court must answer is, as the Court of Special Appeals recognized, what does the term "disbursements" mean? And that court rightly focused on the canons of statutory construction, for answering that question involves interpreting § 3–228. While the process is straight forward and requires resort only to the words of the statute when the statute is clear and unambiguous, *State Dept. of Assessments and Taxation v. Maryland–National Capital Park and Planning Comm'n*, 348 Md. 2, 13, 702 A.2d 690, 696 (1997); *Chesapeake and Potomac Telephone Co. of Maryland v. Director of Finance for Mayor and City Council of Baltimore*, 343 Md. 567, 579, 683 A.2d 512, 517 (1996), something more is required when the statute is ambiguous. Where the meaning of the plain language of the statute, or the language itself, is unclear, "we seek to discern legislative intent from surround-

---

7. The "American Rule" is the name given the principle that costs awarded to a prevailing party in litigation ordinarily do not include the counsel fees of the prevailing party. *Collier v. MD–Individual Practice Ass'n, Inc.*, 327 Md. 1, 13, 607 A.2d 537, 543 (1992). *See Talley v. Talley*, 317 Md. 428, 438, 564 A.2d 777, 782 (1989).

Other provisions of the Maryland Code providing specifically for the award of attorney's fees under certain circumstances, is, for the Court of Special Appeals, further evidence that attorneys fees are not encompassed within the term "disbursements: Maryland Code, (1984, 1995 Repl.Vol.) § 10–623(f) of the State Government Article ("If the court determines that the complainant has substantially prevailed, the court may assess against the defendant governmental unit reasonable attorney's fees and other litigation costs that the complainant reasonably incurred."); Maryland Code (1984, 1990 Repl.Vol.) § 13–408(b) of the Commercial Law Article ("C.L.") ("Attorney's fees.—Any person who brings an action to recover for injury or loss under this section and who is awarded damages may also seek, and the court may award, reasonable attorney's fees."); C.L. § 11–1204; Maryland Code (1957, 1994 Repl.Vol.) Article 49B, § 42 ("Civil actions for discriminatory acts ... (c) Fees and Costs.—In a civil action under this subtitle, the court, in its discretion, may allow the prevailing party reasonable attorney's fees, expert witness fees, and costs.").

ing circumstances, such as legislative history, prior case law, and the purposes upon which the statutory framework was based." *Lewis v. State,* 348 Md. 648, 653, 705 A.2d 1128, 1131 (1998); *See also Haupt v. State,* 340 Md. 462, 471, 667 A.2d 179, 183 (1995). We are also required to interpret the statute as a whole, "[w]here the statute to be construed is a part of a statutory scheme, the legislative intention is not determined from that statute alone, rather it is to be discerned by considering it in light of the statutory scheme." *GEICO v. Insurance Comm'r,* 332 Md. 124, 132, 630 A.2d 713, 717 (1993). *See Gordon Family Partnership v. Gar on Jer,* 348 Md. 129, 138, 702 A.2d 753, 757 (1997); *Popham v. State Farm Mutual Insurance Company,* 333 Md. 136, 148, 634 A.2d 28, 34 (1993). Moreover, neither the words in the statute nor any portion of the statutory scheme should be read "so as to render the other, or any portion of it, meaningless, surplusage, superfluous, or nugatory." *GEICO,* 332 Md. at 132, 630 A.2d at 717. *See also DeBusk v. Johns Hopkins,* 342 Md. 432, 445, 677 A.2d 73, 79 (1996); *Schlossberg v. Citizen's Bank,* 341 Md. 650, 660, 672 A.2d 625, 629–630 (1996); *State v. Pagano,* 341 Md. 129, 134, 669 A.2d 1339, 1341; *In re Roger S.,* 338 Md. 385, 394, 658 A.2d 696, 700 (1995). Nor should we read a statute in a way that is inconsistent with, or ignores, common sense or logic. *Frost v. State,* 336 Md. 125, 137, 647 A.2d 106, 112 (1994). In many contexts, perhaps most, the word "disbursements" is clear and unambiguous. In the present context, however, it is not. Indeed, most of the courts that have interpreted their State's version of § 3–228 have held that, in that context, "disbursements" includes attorneys' fees in the award-enforcement action. *See Anchorage Medical and Surgical Clinic v. James,* 555 P.2d 1320 (Alaska 1976), overruled in part on other grounds, *Ahtna, Inc. v. Ebasco Constructors, Inc.,* 894 P.2d 657 (Alaska 1995); *Canon Sch. Dist. No. 50 v. W.E.S. Construction,* 180 Ariz. 148, 882 P.2d 1274 (1994)[8]; *County of*

---

**8.** The Arizona Supreme Court cited *Floors, Incorporated v. B.G. Danis of New England,* 380 Mass. 91, 401 N.E.2d 839, 844 (1980) for the proposition that " 'fees associated with obtaining and confirming the arbitration award' are not recoverable." That case did not involve

*Clark v. Blanchard Construction*, 98 Nev. 488, 653 P.2d 1217 (1982); *Wachtel v. Shoney's, Inc.*, 830 S.W.2d 905 (Tenn.App. 1991).[9]

It is true, as the intermediate appellate court points out, that *Anchorage Medical* is sparse on rationale [10] and the need for uniformity does play a significant part in the reasoning in

construction of a statute comparable to § 3–228. There, a subcontractor sued on a contractor's bond under a statute that provided that "[a] decree in favor of any claimant . . . shall include reasonable legal fees." *Id.* 401 N.E.2d at 841. That action was stayed while the parties engaged in arbitration as they had contracted to do. *Id.* 401 N.E.2d at 840–41. Having received an arbitration award in its favor, the subcontractor filed a motion in the pending court action to have it confirmed and, at the same time, sought attorneys' fees. *Id.* 401 N.E.2d at 841. Although it held that the arbitration award was properly confirmed in the pending action, the Supreme Judicial Court held that legal fees incurred while arbitrating or acting to confirm, modify, vacate or correct an arbitration award are not recoverable. *Id.* 401 N.E.2d at 844. The only provision of the Massachusetts' version of the Uniform Arbitration Act that the court cited related to the expenses of the arbitration proceedings, the provision comparable § 3–221.

9. The Court of Special Appeals found these cases unpersuasive, reasoning that:
"These cases form a species of jurisprudence by conformity, in which the weight of authority seems to snowball, making inevitable each successive court's consonant result. Absent an otherwise principled basis for such a statutory interpretation, we decline to follow suit. We would be doing so only to achieve conformity with various state enactments of the UAA. In our view, the goal of uniformity among jurisdictions does not override other important canons of statutory construction."
*Blitz* at 115 Md.App. at 485, 694 A.2d at 119. The intermediate appellate court also found it significant that "the Maryland Act varies from the UAA, and other states' versions of the UAA may vary as well." *Id.*

10. The Supreme Court in *Anchorage* found, when construing the equivalent of our section 3–228, that
"Clinic's final point in this appeal is that the superior court erred in awarding $1,000 in attorney's fees to Dr. James. As 09.43.140 of our Uniform Arbitration Act authorizes the superior court to award 'costs and disbursements' to the prevailing party in an action to affirm or modify an arbitration award. Our review of the record has convinced us that the award of attorney's fees should not be disturbed. We thus conclude that the superior court's confirmation of the arbitration award as well as the award of attorney's fees to Dr. James, should be affirmed."

these cases. It is not correct, however, in the belief that the results reached can be explained only on that basis. The court in *County of Clark v. Blanchard Constr. Co.* recognized the significant difference between the initial arbitration proceedings and the confirmation proceedings when it interpreted its version of § 3–228 "to mean that the court is permitted to award attorneys' fees only for the effort expended in this case in obtaining an order confirming the arbitration award and not for any efforts expended prior to that time." 653 P.2d at 1220. To reach that conclusion, the court considered both the confirmation provision and the provision the Court of Special Appeals determined to be critical, the one precluding an award of attorneys' fees in the absence of an express provision in the arbitration agreement. *Id.* Also focusing on that provision, A.R.S. § 12–1510, its version of this State's § 3–221,[11] the Supreme Court of Arizona acknowledged that "[t]he Uniform Act has taken a different approach, expressly excluding attorneys' fees in A.R.S. § 12–1510, but not excluding fees in the confirmation section." *Canon School District,* 882 P.2d at 1279. Then noting that approach had prompted most jurisdictions interpreting the language in its A.R.S. § 12–1514, the Arizona equivalent to § 3–228,[12] to permit the award of attorneys' fees in confirmation proceedings, the court concluded:

"The interpretations of our sister states also promote the public policy of encouraging early payment of valid arbitration awards and the discouragement of nonmeritorious pro-

---

**11.** A.R.S. § 12–1510, titled "Fees and Expenses of arbitration," provides:

"Unless otherwise provided in the agreement to arbitrate, the arbitrators' expenses and fees, together with other expenses, not including counsel fees, incurred in the conduct of the arbitration, shall be paid as provided in the award."

**12.** A.R.S. § 12–1514, pertaining to confirmation of an arbitration award, provides:

"Upon the granting of an order confirming, modifying or correcting an award, judgment or decree shall be entered in conformity therewith and be enforced as any other judgment or decree. Costs of the application and of the proceedings subsequent thereto, and disbursements may be awarded by the court."

tracted confirmation challenges. The prefatory comment to the 1954 draft of the Uniform Arbitration Act stated that court intervention in arbitration 'must be prompt and simple or the values of arbitration will be largely dissipated through prolonged litigation." '

*Id.* (Quoting Handbook of the National Conference of Commissioners on Uniform State Laws 204 (1954)). Therefore, although in this context the court quoted, with approval, the Tennessee Supreme Court in *Holiday Inns, Inc. v. Olsen,* 692 S.W.2d 850, 853 (1985), on the need for the consistent interpretation of uniform acts: "It is axiomatic that a purpose in enacting uniform laws is to achieve conformity, not uniqueness," it is patent that that was not the sole or even the most important reason for the decision. Indeed, what *Canon School District* demonstrates is that there is absolutely no inconsistency between the goal of uniformity of interpretation and the rules of statutory construction.

*Wachtel v. Shoney's, Inc.* followed the reasoning of *County of Clark v. Blanchard Construction* in construing the identical provision. That court made clear, however, that, while it was required, by its Supreme Court, to strive to maintain the standardization of construction of uniform acts,

"This does not mean that this court will blindly follow decisions of other states interpreting uniform acts, but this court will seriously consider the constructions given to comparable statutes in other jurisdictions and will espouse them to maintain conformity when they are in harmony with the spirit of the statute and do not antagonize public policy of this state."

*Wachtel,* 830 S.W.2d at 909, (quoting *Holiday Inns, Inc. v. Olsen,* 692 S.W.2d at 853.)

And that one of the purposes that motivated the various State legislatures to enact the Uniform Arbitration Act was the desire for uniformity is amply demonstrated by the inclusion in the act as enacted of a provision similar or identical to § 3–232. Thus, by conforming the interpretation of § 3–228 to that of our sister states, we are, in fact, maintaining the

standardization of construction of uniform acts and, in that way, carrying out the legislative intent of uniformity.

Viewed in light of the purpose of arbitration[13] and, in particular, the Uniform Act as enacted in Maryland, and the interpretation other courts have given their equivalent of § 3–228(b), we hold, as the Legislature intended, that "disbursements," in the context of proceedings to confirm an arbitration award, include attorneys' fees.

JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED. CASE REMANDED TO THAT COURT

---

13. The Uniform Arbitration Act is an alternative method of dispute resolution, embodying a legislative policy favoring enforcement of executory agreements to arbitrate. *Crown Oil and Wax Co. of Delaware, Inc. v. Glen Const. Co. of Virginia, Inc.*, 320 Md. 546, 558, 578 A.2d 1184, 1189 (1990); *Anne Arundel County v. Fraternal Order of Anne Arundel Detention Officers and Personnel*, 313 Md. 98, 105, 543 A.2d 841, 845 (1988); *Gold Coast Mall v. Larmar Corp.*, 298 Md. 96, 103, 468 A.2d 91, 95 (1983); *Charles J. Frank, Inc. v. Associated Jewish Charities*, 294 Md. 443, 448, 450 A.2d 1304, 1306 (1982); *Aetna Casualty & Sur. Co. v. Insurance Comm'r*, 293 Md. 409, 421, 445 A.2d 14, 19 (1982); *Maietta v. Greenfield*, 267 Md. 287, 291, 297 A.2d 244, 246 (1972); *Bel Pre Medical Ctr., Inc. v. Frederick Contractors*, 21 Md.App. 307, 317–318, 320 A.2d 558, 565 (1974), *rev'd*, on other grounds, 274 Md. 307, 334 A.2d 526 (1975). This is so because "[t]he purpose of arbitration is 'to compose disputes in a simple and inexpensive manner.'" *Board of Educ. of Prince George's County v. Prince George's County Educators' Ass'n, Inc.*, 309 Md. 85, 98, 522 A.2d 931, 937 (1987) (quoting *Roberts v. Consumers' Can Co.*, 102 Md. 362, 368–369, 62 A. 585 (1905)). *See also Schreiber v. Pacific Coast Fire Ins. Co.*, 195 Md. 639, 647, 75 A.2d 108, 112 (1950) ("the purpose of the parties in creating [arbitration tribunals] is to have their disputes settled speedily and inexpensively by a decision which will be final and unalterable"); *Bel Pre Medical Ctr.*, 21 Md.App. at 315, 320 A.2d at 563 ("The arbitration process provides a speedy, informal, relatively inexpensive, and private procedure for resolving controversies arising out of commercial transactions, as well as a tribunal uniquely qualified to resolve such disputes."). This Court recognized early on that extensive judicial review of an arbitration award would defeat this purpose. *Roberts*, 102 Md. at 368, 62 A. at 585. In *Schreiber*, we stated: "[I]f the decision of such a tribunal should be subject to review under the strict rules of the law, the arbitration, instead of promoting economy and finality, would generally be but a forerunner to protracted litigation." *Id.* at 647, 75 A.2d at 112. *See also Bel Pre Medical Ctr.*, 21 Md.App. at 320, 320 A.2d at 565 ("The prime purpose of these provisions is to discourage litigation and to foster voluntary resolution of disputes in a forum created, controlled and administered according to the parties' agreement to arbitrate.").

WITH INSTRUCTIONS TO VACATE THE JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE COUNTY AND TO REMAND THIS ACTION TO THAT COURT FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY THE RESPONDENT.

## ON MOTION FOR CLARIFICATION

BELL, Chief Judge.

The petitioner, Marcel Blitz, has filed Petitioner's Motion For Clarification, requesting this Court to clarify the scope of its decision; to state clearly whether the attorneys' fees contemplated by the term "disbursements" include those "incurred . . . at the appellate level in connection with confirming and enforcing an arbitration award." The motion was prompted by the respondent taking the position, subsequent to the filing of the opinion in this case, that the opinion addresses only those attorneys' fees that the petitioner incurred in the trial court and not those he incurred during the appeals. That remains the respondent's position. Despite its recognition that this Court determined that the word "disbursements," in the context of Maryland Code (1974, 1995 Repl.Vol.) § 3–228(b) of the Courts and Judicial Proceedings Article, includes attorneys' fees, in its Respondent's Answer To Motion For Clarification, relying on the proposition that "[t]he award of attorneys' fees for pursuing the interpretation of a statute on appeal would run contrary to accepted Maryland law," the respondent asserts, "the opinion of this Court does not award attorneys' fees for the appellate efforts of Petitioner."

The issue in this case was straightforward, "whether, pursuant to Maryland Code (1974, 1995 Repl.Vol.), § 3–228(b) of the Courts and Judicial Proceedings Article, the Maryland Uniform Arbitration Act (the Act), the prevailing party in a binding arbitration proceeding may recover reasonable attorney fees when the losing party's unjustified refusal to comply with the award requires the prevailing party to institute and

successfully prosecute an action in order to confirm and enforce the arbitration award." We answered the question in the affirmative, reasoning, "[v]iewed in light of the purpose of arbitration and, in particular, the Uniform Act as enacted in Maryland, and the interpretation other courts have given their equivalent of § 3-228(b), we hold, as the Legislature intended, that disbursements, in the context of proceedings to confirm an arbitration award, include attorneys' fees." In reaching that conclusion, we were mindful that we were interpreting a uniform act, which, consistent with the Legislature's instructions, set out in § 3-232 of the Act, was to "be so interpreted and construed as to effectuate its general purpose to make uniform the law of the states which enact it." Thus, we reviewed decisions of our sister States that have construed the provision comparable to § 3-228(b) in their uniform arbitration act, and found that most of them have reached the same result we reached.

We also discovered that the desirability of uniformity of interpretation of uniform acts was not the only rationale for the decisions. Those decisions could only be explained by reference to the "significant difference between the initial arbitration proceedings and the confirmation proceedings." The Supreme Court of Arizona made just that point, we noted, when it concluded:

> The interpretations of our sister states also promote the public policy of encouraging early payment of valid arbitration awards and the discouragement of nonmeritorious protracted confirmation challenges. The prefatory comment to the 1954 draft of the Uniform Arbitration Act stated that court intervention in arbitration 'must be prompt and simple or the values of arbitration will be largely dissipated through prolonged litigation."

*Canon Sch. Dist. No. 50 v. W.E.S. Construction,* 180 Ariz. 148, 882 P.2d 1274, 1279 (Quoting Handbook of the National Conference of Commissioners on Uniform State Laws 204 (1954). Moreover, interpreting § 3-228(b) as including attorneys' fees is, we said, consistent with, and furthers, the purpose of the Uniform Arbitration Act and arbitration in general.

The respondent concedes, as it must, that our opinion makes clear that attorneys' fees are payable in connection with confirmation proceedings at the trial level. If "disbursements" include attorneys' fees incurred in a trial proceeding to confirm an arbitration award, it must also include attorneys' fees in an appellate proceeding challenging the trial court's decision. This is especially the case when, as here, the appellate proceedings were made necessary by the respondent's contention that attorneys' fees were not payable at all in respect to confirmation proceedings and it was only as a result of the appellate proceedings that an interpretation of the applicable statute was obtained.

While it seems clear enough that our decision contemplated the payment of *all* attorneys' fees necessary to obtain confirmation of the arbitration award, we did not explicitly spell it out. We do so now in the interest of avoiding any further argument on the subject, thus avoiding the possible expense and delay of another appeal and for the guidance of the trial court on remand: pursuant to § 3–228(b), the prevailing party is entitled to recover attorneys' fees incurred both at trial and on appeal in confirming and enforcing an arbitration award.

The Motion For Clarification is granted.