766 A.2d 187

**COMPTROLLER OF THE TREASURY**

v.

**FAIRLAND MARKET, INC.**

**No. 2968, Sept. Term, 1999.**

Court of Special Appeals of Maryland.

Feb. 2, 2001.

Brian L. Oliner, Assistant Attorney General (J. Joseph Curran, Jr., Attorney General, on the brief), Baltimore, for appellant.

No brief filed by appellee's counsel.

Argued before MURPHY, C.J., THIEME,* and SONNER, JJ.

SONNER, Judge.

In 1992, Maryland experienced a sobering budget deficit. The General Assembly responded to the crisis by calling a special session to consider and approve one piece of legislation, the Budget Financing Act. See 1992 Md. Laws, Spec. Sess., ch. 1. Among its many changes, the bill narrowed or repealed certain tax exemptions and credits, expanded the list of taxable items and income, and implemented or increased certain licensing fees. As Senator Laurence Levitan, chairman of the Senate Budget and Taxation Committee, explained, these changes were intended to increase the State's revenue and close the burgeoning budget gap. Senator Laurence Levitan, Memorandum to House Comm. on Ways and Means and the Sen. Budget and Taxation Comm. (Jan. 29, 1992). The bill's revised fiscal note projected a $32 million increase of State general fund revenues in 1992 and $322.7 million in 1993.

Consistent with this revenue-raising purpose, the legislation amended § 11–105 of the Tax–General Article, which allows a retailer to recoup, in the form of a tax credit, a percentage of the sales and use tax that it has collected on behalf of the State. Md.Code (1957, 1997 Repl.Vol.) Tax–Gen., § 11–105(a). Before 1992, a retailer could receive a tax credit equaling 1.2% of its total taxable sales. Md.Code (1957, 1988 Repl.Vol.) Tax–Gen., § 11–105. The 1992 legislation reduced the overall credit to .6% of total taxable sales, although section (b)(1) of the bill retained the 1.2 percentage rate for the first $4,200.00 in sales. The bill also inserted section (b)(2) to § 11–105, to provide that a retailer with multiple locations, who filed, or was eligible to file, a consolidated return, could take advantage of the 1.2% rate for only the first $4,200.00 in total sales across

---

* Thieme, J. participated in the hearing and conference of this case while an active member of this Court; he participated in the adoption of this opinion as a retired, specially assigned member of this Court.

its locations, not at each location. Thus, the legislation reduced the tax credit overall, and specifically curtailed the tax credit for retailers with multiple locations by treating the businesses as one entity, whether or not the retailers filed a consolidated return.

Appellee, Fairland Market, Inc. ("Fairland"), tested the enforcement of amended § 11–105 in 1998, following the Comptroller of the Treasury's audit of its accounts for the period of March 1, 1994 through January 31, 1998. During that time, Fairland operated between six and seven retail stores, each of which had a separate sales and use tax account with the State. It never sought to file a consolidated return, and treated each store as a separate entity when it computed its collection credit. In 1998, the Comptroller assessed Fairland for unpaid taxes in the amount of $2,188.62,[1] claiming it was eligible to file a consolidated return, even if it did not do so, and was therefore subject to a smaller credit rate by operation of § 11–105(b)(2).

The Maryland Tax Court reversed the Comptroller's assessment on July 20, 1999. It looked to § 11–502(c) of the Tax–General Article, which states:

> *Consolidated return.*—If the Comptroller approves, a vendor engaging in more than 1 business in which the vendor makes retail sales or sales for use may file a consolidated return covering the activities of the businesses.

Md.Code (1957, 1997 Repl.Vol.) Tax–Gen., § 11–502(c). The tax court held that 502(c) created a preliminary step for application of 105(b)(2). That is, a retailer must apply to submit a consolidated return, which the Comptroller may either approve or disapprove. If the Comptroller approves the application, the retailer "is eligible to file a consolidated return" under § 11–105(b)(2), and must compute its tax credit based on the total sales of all its businesses. The court reasoned that the Comptroller's approval triggers the applica-

---

1. The Comptroller actually assessed Fairland in the amount of $7,386.91, plus interest and penalties. Fairland contested only the collection credit amount of $2,188.62.

bility of § 11–502(b)(2), regardless of whether the retailer follows through with its application and actually files a consolidated return. Under the court's reasoning, when a retailer does not apply to file a consolidated return or when the Comptroller denies a retailer's filing request, § 11–502(b)(2) is inapplicable.

The Circuit Court for Baltimore City affirmed the tax court in December 1999. While confident that the General Assembly amended § 11–105 "to gather and receive its share of the taxpaying dollars to the coffers of the treasury," it agreed with the tax court that § 11–502(c), particularly the word "may," set forth a condition precedent for the triggering of § 11–105(b)(2). The Comptroller appealed and was the only party to brief this Court and present argument.

### *Discussion*

The issue here is a question of statutory construction, which requires us to ascertain and effectuate the intent of the Legislature. *Chesapeake Charter, Inc. v. Anne Arundel County Bd. Of Educ.*, 358 Md. 129, 135, 747 A.2d 625 (2000). Where the language at issue is clear, unambiguous, and consistent with the statute's apparent purpose, our inquiry normally ends. *Id.* If, however, the language is susceptible to more than one meaning, we "examine the surrounding circumstances, including legislative history, prior case law and the statute's purpose to discern legislative intent." *Melgar v. State*, 355 Md. 339, 347, 734 A.2d 712 (1999). The language must be read in congruence with the statutory scheme so that no part of the statute is rendered "meaningless, surplusage, superfluous, or nugatory." *Blitz v. Beth Isaac Adas Israel Congregation*, 352 Md. 31, 40, 720 A.2d 912 (1998). Moreover, where there are conflicting interpretations, we must adopt the construction that is logical, reasonable, and in accord with common sense. *Chesapeake Charter*, 358 Md. at 135, 747 A.2d 625; *Blitz*, 352 Md. at 40, 720 A.2d 912.

Read separately, section 105 and section 502 may appear clear, but, when read together, they create a definite ambiguity. Section 105(b)(2) includes all retailers who are

eligible to file a consolidated return, but it also refers us to section 502, which specifically provides for consolidated returns when retailers obtain the Comptroller's approval. The threshold question, then, is does a retailer need the Comptroller's approval to be "eligible" to file a consolidated return under section 105? The courts below answered that question in the affirmative. The Comptroller urges us to adopt its "long-standing interpretation" that, to be eligible, a retailer need only operate more than one business. To read section 502 as a condition precedent for application of section 105, he argues, is to jumble two distinct parts of the Sales and Use Tax Title, one dealing with record keeping, and the other with the detailed substance of configuring the sales and use tax.

We find the Comptroller's position persuasive. Title 11 of the Tax–General Article is divided into seven subtitles. Section 105 falls under the first subtitle, which defines terms, sets forth taxable items and services, and establishes the tax rates. It speaks of percentages and calculations, *i.e.* how much tax is due. Section 502, on the other hand, falls under the fifth subtitle, entitled "Returns and Records," which details when and how a vendor files a sales and use tax return. The fifth subtitle also requires retailers to keep complete and accurate records, which are subject to the Comptroller's review. *See* § 11–504. As the Comptroller explained at oral argument, this subtitle merely lays out the paperwork requirements. Indeed, as a matter of course, the Comptroller generally approves requests to file consolidated returns. The subtitle does not speak to the substantive question of how much tax is due, and therefore, should not be read as a preliminary step in that computation.

Legislative history further supports the Comptroller's position. The General Assembly amended section 11–102 to raise revenues by halving the collection credit percentage rate. While it retained the old rate for a portion of sales, perhaps as a concession to the retail industry, it clearly did not want retailers with multiple locations to take advantage of the credit multiple times. Apparently, the Legislature also did not want retailers like Fairland to evade the limitation of

section 11–102(b)(2) by simply not filing a consolidated return. Rather, the lower collection credit applies irrespective of the paperwork submitted. Our interpretation constitutes a fair and common sense reading of the provisions. As the Comptroller explained in his brief, "If the lower courts' interpretation is correct, no vendor with multiple locations will request permission to file a consolidated return; then it will never be 'eligible to file' a consolidated return. Thus, the vendor can assure itself of always receiving a higher collection credit." Moreover, the courts' reading renders the key phrase, "or is eligible to file," nugatory since the only retailers covered by it would be those that are approved for consolidated filing under section 502(c), but do not actually file a consolidated return. In the Comptroller's view, that is an "absurd" prospect.

Finally, we are mindful that a tax credit must be strictly construed in favor of the State. *State Department of Assessments and Taxation v. Belcher*, 315 Md. 111, 119, 553 A.2d 691 (1989). While Title 11 might have benefitted from more precise drafting, from the 1992 amendments, we discern a legislative intent to raise funds and limit the collection credit for retailers in Fairland's position.

**JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY REVERSED; COSTS TO BE PAID BY THE COMPTROLLER OF THE TREASURY.**